Timothy M. KENDRICK, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–00–00699–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

July 25, 2002.

Discretionary Review Refused
Jan. 15, 2003.

Stephen F. Morris, Houston, for Appellant.

Dan McCrory, Houston, for Appellee.

Panel consists of Justices ANDERSON, HUDSON, and SEYMORE.

## MAJORITY OPINION

JOHN S. ANDERSON, Justice.

Appellant, Timothy M. Kendrick, was charged by indictment with the offense of

possession of at least 400 grams of cocaine with the intent to deliver. A jury found appellant guilty of the charged offense, and the trial court assessed punishment at thirty years confinement in the Institutional Division of the Texas Department of Criminal Justice and a $500 fine. In three points of error, appellant complains the trial court erred in overruling his motion to suppress and the evidence was legally and factually insufficient to support his conviction. We affirm.

## FACTUAL BACKGROUND

Officer Deanna Harmon and Officer Billy Corley worked interdiction at Intercontinental Airport. Officer Harmon had served in the police department's narcotics division for seventeen years; and Officer Corley, for fourteen years. On January 21, 1999, Officer Corley observed appellant arrive at the airport by taxi and hurriedly enter the terminal. The officers noticed appellant's pants and shirt were extremely baggy. Appellant seemed nervous, looking at people around the airport in an effort to see whether someone was watching him. Appellant approached a ticket agent and then walked away. He then approached a second ticket agent. Subsequently, appellant used a pay phone and then returned to the second ticket agent and left for another terminal.

Once appellant departed, Officer Corley spoke with the two ticket agents. The first agent informed Corley appellant did not know his destination or the airline on which he was flying. Appellant knew only a ticket was waiting for him. The second agent informed Corley that, after appellant made the phone call, he learned he was flying to Toledo on American Airlines. Officer Harmon observed appellant enter the second terminal and approach the American Airlines ticket counter. Appellant appeared extremely nervous, fidgety, and continuously pulled down on the front of his baggy shirt. Harmon noticed appellant's luggage did not contain an identification tag.

After appellant received his ticket, Officer Harmon approached the counter and obtained a copy of appellant's flight information. Harmon called the phone number listed on appellant's itinerary and learned it was not a working number. Moreover, she checked the identification number listed on appellant's itinerary and learned the number was invalid. The officers went to appellant's departure gate and found appellant sitting alone. Appellant placed his suitcase on his lap. The officers found this conduct unusual because the suitcase was large and appellant's flight was not scheduled to depart for another two hours.

After observing appellant engage in numerous suspicious activities, the officers approached him, introduced themselves, and engaged him in conversation. Appellant had at that time passed through the metal detectors at the airport. Eventually, Officer Harmon asked appellant to look in his bag. Initially, appellant refused the request, then agreed, and subsequently changed his mind again because he didn't want her "messing with his stuff." When Harmon asked appellant whether he would allow a narcotics canine to sniff his baggage, he initially agreed to the procedure, however, later changed his mind. At this point, Harmon decided to detain appellant.

Officer Corley asked appellant whether he could pat him down. Appellant stood up and raised his hands. Officer Corley then patted appellant down and detected a large solid brick object located on the inside of appellant's leg. Believing the object was narcotics, the officers arrested appellant and transported him to their office. After obtaining a search warrant, the officers searched appellant's body and found a kilogram of cocaine taped to his

leg. In addition, marijuana cigarettes were attached to the brick of cocaine.

Appellant moved to suppress the physical evidence. Following a hearing, the trial court overruled the motion.

## DISCUSSION

### I.

### Motion to Suppress

In his first point of error, appellant contends the trial court erred in denying his motion to suppress. Appellant maintains the cocaine was obtained as the result of an unlawful *Terry* search. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Specifically, appellant claims the officers did not have reasonable suspicion to search appellant for weapons.[1]

The trial court did not set forth findings of fact and conclusions of law in support of its ruling. On appeal, the State argues the search was consensual. Alternatively, the State argues the search was a valid *Terry* search because the officers had reasonable suspicion appellant was armed and dangerous.

We review a trial court's decision on a motion to suppress under an abuse of discretion standard. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996). We should give almost total deference to a trial court's determination of historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We should also give the same amount of deference to the trial court's ruling on "application of law to fact questions"—also known as

"mixed questions of law and fact"—if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* An appellate court reviews de novo "mixed questions of law and fact" not falling within this category. *Id.* If, as here, the trial court does not file findings of fact and conclusions of law, we presume the trial court made the findings necessary to support its ruling so long as those implied findings are supported by the record. *Zarychta v. State,* 44 S.W.3d 155, 163 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd), *cert. denied,* —— U.S. ——, 122 S.Ct. 2312, 152 L.Ed.2d 1066 (2002).

Under the Fourth and Fourteenth Amendments to the United States Constitution, a search conducted without a warrant issued with probable cause is *per se* unreasonable. *Schneckloth v. Busta- monte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). Consent to search, however, is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Id.,* 412 U.S. at 219, 93 S.Ct. at 2043–44; *Carmouche v. State,* 10 S.W.3d 323, 331 (Tex.Crim.App.2000). The test for a valid consent to search requires the consent to be voluntary, and voluntariness is a question of fact to be determined from all the circumstances. *Schneckloth,* 412 U.S. at 248–49, 93 S.Ct. at 2059; *Car- mouche,* 10 S.W.3d at 331. For consent to be voluntary, it must not be coerced, by explicit or implicit means, by implied threat or covert force. *Carmouche,* 10 S.W.3d at 331. Under the Texas Constitution, the State is required to prove by clear and convincing evidence that consent was voluntarily given. *State v. Ibarra,* 953 S.W.2d 242, 243 (Tex.Crim.App.1997).

---

1. In his first point of error, appellant does not contest the lawfulness of his initial detention, instead complaining only about the lawfulness of the pat-down search which followed his detention. Accordingly, in addressing appellant's first point of error, we assume the detention was legal and limit our review to the legality of the pat-down search of appellant.

██ Reviewing the record in the light most favorable to the trial court's ruling, we conclude the State met its burden of demonstrating by clear and convincing evidence that appellant consented to a pat-down search. Officer Corley requested appellant's permission to conduct a pat-down, and appellant stood up and raised his hands, indicating his consent. *See McAllister v. State,* 34 S.W.3d 346, 351 (Tex.App.-Texarkana 2000, pet. ref'd) (concluding defendant consented to search when, after officer told defendant he had to conduct a pat-down search, defendant raised his hands indicating officer was free to proceed). There is sufficient evidence appellant was under no compulsion to accept Corley's request; in fact, the record indicates appellant refused the previous requests to search his luggage and the succeeding request to subject his luggage to a canine sniff search. When appellant raised his hands, he indicated Corley was free to proceed with a pat-down search and thus consented to the search. Moreover, Officer Harmon was wearing plain clothes, no weapons were drawn or displayed, and appellant was not threatened by the officers in any way. There was not a hint of coercion or implied force during the encounter leading up to appellant's consent to the search.

Having decided appellant consented to the search, we need not decide whether the search was valid under the State's alternative theory of a *Terry* frisk. We overrule appellant's first point of error.

## II.

### Sufficiency of the Evidence

In his second and third points of error, appellant challenges the legal and factual sufficiency of the evidence to support his conviction. Appellant, however, is not challenging the sufficiency of the evidence of any of the elements of the substantive offense of possession of at least 400 grams of cocaine with intent to deliver.

Instead, appellant focuses on the jury instruction given under Texas Code of Criminal Procedure article 38.23(a), which provides:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2002). The jury instruction in the present case read:

You are instructed that no evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

You are further instructed that before an officer has the right to make a temporary investigative detention of a defendant, the officer must have a reasonable suspicion that the defendant is connected with some criminal activity that is or has occurred. To justify an investigative detention, an officer must have specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in crimi-

nal activity. The reasonableness of a temporary detention must be examined in terms of the totally [sic] of the circumstances. The test for reasonable suspicion is not whether conduct is innocent or guilty, but the degree of suspicion that attaches to noncriminal acts.

Now, therefore, before you consider the testimony of Officers Harmon and Corley concerning their observations of the defendant after his detention, you must first find beyond a reasonable doubt that the officer had such reasonable suspicion, and if you do not find beyond a reasonable doubt you will disregard such testimony.

Relying on this instruction, appellant contends his conviction was not supported by sufficient evidence because his detention was unlawful.[2]

### A. Preliminary Issue

Despite appellant's challenge to the evidence to support his "detention" in the actual wording of his second and third points of error, he nevertheless changes his focus in the text of his argument under point two, contending "the *search* of the appellant for weapons during his detention was unlawful." (Emphasis added). Similarly, under his third point of error, appellant summarizes points of error two and three as follows:

In appellant's second point of error appellant challenges the sufficiency of the evidence introduced by the State to show beyond a reasonable doubt that the appellant had been *searched* lawfully. Under this [third] point of error, appellant urges this court to review the sufficiency of the evidence under the

'greater weight and preponderance of the evidence' standard under *Clewis.* (Emphasis added).

The jury was not given an instruction on the question of the validity of the officer's pat-down search of appellant. Thus, the jury made no implied finding regarding the search. The jury was charged on the issue of the lawfulness of appellant's detention, and made, through its verdict of guilty, an implied finding thereon. *See Coleman v. State,* 45 S.W.3d 175, 178 (Tex. App.-Houston [1st Dist.] 2001, pet. ref'd) (stating when jury charge contains an instruction derived from article 38.23(a), guilty verdict means jury *found* the evidence supporting the conviction was not illegally obtained). We have overruled appellant's challenge to the trial court's ruling on the motion to suppress regarding the lawfulness of the search. Because no jury charge was presented on this issue, thus precluding any implied finding thereon, appellant presents nothing for review beyond the challenge we have already overruled.

### B. Legal Sufficiency

In point of error two, appellant challenges the "legal sufficiency" of the evidence. He asks this court to review the evidence supporting the legality of his detention under the standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). He has, however, not cited any authority supporting his request to apply the *Jackson* standard to the jury's implied findings regarding the legality of his detention. There is good reason he cannot do so.

---

**2.** Appellant's second and third points of error are virtually identical, except for the distinction between legal and factual sufficiency of the evidence. Point of error two is as follows:

The evidence was insufficient to support the appellant [sic] conviction for possession

of cocaine with the intent to deliver, as a matter of law, where the *jury* was authorized to consider the legality of the appellant's detention, and where the detention was unlawful. (Emphasis added).

■ Under the first sentence of article 38.23(a), the admissibility of evidence is a matter for the court. *Pierce v. State*, 32 S.W.3d 247, 251 (Tex.Crim.App.2000). The decision to exclude evidence may be based on a ruling of law, a finding of fact, or both. *Id.*

Thus, the jury may not decide the question of law as to whether the cocaine was admissible at trial as a threshold matter, but is allowed, under the second sentence of article 38.23(a), to resolve contested issues of fact about the obtaining of the evidence. *See id.* The jury is given a role to be a backup protection against erroneous judicial rulings that have admitted evidence, not to supplant them. *Id.* at 253. There is no issue for the jury when the question is one of law only. *Id.* at 251.

Here, the jury was not addressing the admissibility of the cocaine, but rather the question of whether the arresting officers had articulable facts reasonably warranting appellant's detention. During trial, the officers gave their reasons for suspecting appellant might be a drug courier, and appellant testified that there were legitimate bases for everything he did while under surveillance at the airport. Because the jury was only resolving the weight and credibility of the officers' testimony to support reasonable suspicion in light of the controverting testimony of appellant, the jury's implied finding in its guilty verdict that the officers had reasonable suspicion to detain is only subject to a factual sufficiency review. The jury's finding that essential evidence was not obtained in violation of the constitutions and laws of the United States and of this State does not supplant the trial court's ruling on appellant's motion to suppress evidence. *Id.* at 253.

In essence, appellant's "legal insufficiency" argument is a claim that the evidence of the cocaine should never have reached the jury. *Cf. Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App.2000) (analyzing defendant's claim of legal insufficiency as claim evidence of his justification defense was so compelling, issue of his guilt should never have been presented to jury for its consideration), *cert. denied*, 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001). Appellant's challenge in this regard is therefore more appropriately addressed to the trial court's legal determination to admit the evidence.

Appellant could, and did in point one above, appeal the trial court's ruling on the suppression motion, arguing the officers lacked reasonable suspicion to search appellant for weapons. He has not, however, appealed the trial court's implied matter of law ruling the officers had reasonable suspicion to detain appellant.[3]

### C. Factual Sufficiency

■ In point of error three, appellant challenges the factual sufficiency of the evidence relating to the legality of his detention. In addressing the jury's implied finding appellant was legally detained, we apply the usual standard for a challenge to the factual sufficiency of the evidence to support a conviction. *See Coleman*, 45 S.W.3d at 178. In conducting a factual sufficiency review, we do not view the evidence in the light most favorable to the verdict. Instead, we view the evidence in a neutral light favoring neither party. *See Clewis v. State*, 922 S.W.2d 126, 134 (Tex.Crim.App.1996). When, as here, a defendant has put forth evidence contrary to the State's evidence, the complete and

---

**3.** Had appellant submitted such issue on appeal, we would have reviewed *de novo* the trial court's application of the relevant Fourth Amendment standards. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex.Crim.App.2000)

correct standard we must follow in conducting a *Clewis* factual sufficiency review "asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim.App.2000). In conducting a factual sufficiency review, the appellate court must accord due deference to the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence. *Id.* at 9.

▮▮▮▮ A police officer may stop and briefly detain a person for investigation if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *Woods v. State*, 956 S.W.2d 33, 35 (Tex.Crim.App.1997) (citing *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884). Innocent behavior will frequently provide the basis for a showing of reasonable suspicion; the relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular types of noncriminal acts. *See Woods*, 956 S.W.2d at 38 (citing *U.S. v. Sokolow*, 490 U.S. 1, 10, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1 (1989)). A court examines the reasonableness of a temporary detention in terms of the totality of the circumstances. *Woods*, 956 S.W.2d at 38.

▮▮▮ The record reflects Officer Corley observed appellant arrive at the airport by taxi and hurriedly enter the terminal. Officer Harmon testified drug smugglers usually arrive at the airport by taxi. In addition, appellant's shirt and red pants were extremely baggy. He acted nervous, and appeared to be looking around to see whether anyone was watching him. Again, both officers testified this behavior is typical of drug smugglers. Once appellant entered the terminal, he approached a ticket agent, walked away, approached a second ticket agent, used a pay phone, and returned to the second ticket agent. Officer Corley spoke to the two ticket agents. The first agent informed Corley appellant did not know to which city or on which airline he was flying. The second agent stated appellant learned he was flying to Toledo on American Airlines after he made the phone call. Based on their training and experience, Officer Harmon testified appellant's arrival at the airport without knowing his destination was "highly unusual."

Moreover, when appellant approached American Airlines, he appeared fidgety and continuously pulled down the front of his shirt. There were no identification tags on appellant's luggage, and Harmon testified drug smugglers do not tag their luggage to avoid tracing the luggage back to them. The officers obtained a copy of appellant's itinerary and learned appellant had missed an earlier flight. Harmon became suspicious because drug smugglers usually arrive at the airport just prior to their scheduled departure to avoid law enforcement detection. Also, the officers learned the phone number listed on the appellant's itinerary was not a working number, and appellant's identification number was invalid. The officers found appellant sitting alone at his departure gate with his suitcase in his lap. Harmon explained drug smugglers often sit alone to avoid communicating with others. Further, the officers found it unusual for appellant to sit with a large suitcase on his lap because he had a lot of time before his plane was to leave. Based on these articulable facts, the officers decided to approach appellant, introduce themselves, and speak to appellant regarding his travel plans.

Appellant agreed significantly with much of the detailed testimony of Officers Harmon and Corley regarding the events that transpired at the airport. However, appellant offered some contrary evidence in an attempt to show Officers Harmon and Corley detained appellant illegally. Specifically, appellant testified he knew he was flying to Toledo on American Airlines, but his taxi driver, after being told to drive to American Airlines, mistakenly dropped him off at the Continental Airlines terminal. Appellant argues this was the reason he appeared confused and agitated. Appellant stated he approached the two ticket agents in order to determine where the American Airlines terminal was located. Also, appellant asserts he did not make a phone call to ascertain his destination; rather, he was calling an American Airlines 1–800 number. However, although appellant introduced factors that may have cast doubt on his possible criminal activity at the time the officers approached him, these factors do not undermine the State's evidence Officers Harmon and Corley specifically articulated facts, personal to appellant, which taken together with rational inferences from those facts, led them to conclude appellant was engaged in criminal activity.

Consequently, we hold the jury's implied finding the officers had reasonable suspicion based on specific and articulable facts to detain appellant is not greatly outweighed by appellant's contrary proof to the extent that the contrary finding is clearly wrong and unjust. *See Johnson,* 23 S.W.3d at 11. Therefore, we hold there is factually sufficient evidence to support the jury's implied finding appellant was legally detained.

We overrule appellant's second and third points of error.[4]

We affirm the judgment of the trial court.

HUDSON, J., concurs.

HARVEY HUDSON, Justice, concurring.

In his first point of error, appellant directly challenges the trial court's implied holding that under the facts presented here the police had reasonable suspicion to conduct a "pat down" search for weapons. In his second and third points of error, appellant makes a related attack by challenging the sufficiency of the evidence to support the jury's implied finding that the police had reasonable suspicion to search for weapons.

I join the majority in concluding that appellant consented to the search, and thus agree that the first point of error is without merit. Moreover, I have no quarrel with the majority's conclusion that the evidence is sufficient to support the jury's implied finding that the police had reasonable suspicion to search for weapons. I write separately only because appellant was not entitled, in my view, to have the issue of reasonable suspicion presented to the jury.

A trial court is not required to give an Article 38.23 instruction where the objection to the evidence requires a legal, rather than a factual determination. *Crunk v. State,* 934 S.W.2d 788, 794 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd). Here, appellant did not challenge the credibility of the police officers or dispute their

---

4. We do not interpret appellant to be arguing inclusion of the Rule 38.23(a) instruction added an additional "element" to the offense, which would be subject to both legal and factual sufficiency analysis. If this is indeed appellant's argument, the argument was rejected in *Hollie v. State,* 962 S.W.2d 302, 303–04 (Tex.App.-Houston [1st Dist.] 1998), *pet. dism'd as improvidently granted,* 984 S.W.2d 263 (Tex.Crim.App.1999) (per curiam).

testimony regarding the various circumstances observed by or represented to them. Rather, appellant offered exculpatory explanations for his behavior and challenged the correctness of the information relayed to officers by the ticket agents. In determining the existence of reasonable suspicion, an objective standard is utilized: would the facts available to the officer at the moment of seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate. *Garcia v. State*, 3 S.W.3d 227, 233 (Tex.App.-Houston [14th Dist.] 1999), *aff'd*, 43 S.W.3d 527 (Tex.Crim.App.2001). Because no fact issue was raised by appellant, he was not entitled to an Article 38.23 instruction. Moreover, the legal issue regarding the existence of reasonable suspicion was solely for the court, not the jury, to resolve. Accordingly, appellant should not be heard to complain that the jury's determination of reasonable suspicion was not supported by the evidence.

With these observations, I concur in the judgment of the court.