COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
RAMIN TODD,                                                   )                  No. 08-03-00443-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  34th District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 20020D05881)

O P I N I O N

            Appellant pled guilty to the offense of possession of cocaine in an amount less than one
gram. He was sentenced to two years in a state jail to run concurrently with his sentence in cause
number 20020D04584. At issue is the denial of his motion to suppress. Finding no error, we affirm.FACTUAL SUMMARY
            On December 19, 2001, Sergeant Todd Brackhahn was conducting a performance evaluation
of trooper Jason Robinson during routine patrol on Interstate 10, east of El Paso. The troopers were
engaged in a traffic stop, and Robinson was writing a driver a ticket. Brackhahn noticed a Ford
sports utility vehicle in the right-hand lane of traffic. The troopers were back on the road after the
traffic stop within approximately two to three minutes. Traffic was heavy, and the SUV initially cut
from the right lane in front of a car into the left lane with approximately one car length in between. 
This maneuver is extremely dangerous and constitutes a traffic violation of unsafe lane change. 
Brackhahn characterized the lane change as unsafe due to the speed of the vehicles and the time
needed to stop. He also noticed that the car in back had to brake to avoid hitting the SUV. The SUV
then committed two more similar traffic violations. The vehicle cut in front of the car the first time,
sped up, cut back into traffic again in front of another vehicle, went up, and cut back into traffic
again. Brackhahn stated that the SUV was whipping in and out of traffic rapidly and committed
three violations in a ten to fifteen second time period. He also saw the vehicle passing on the right,
which is a further violation. 
            The troopers attempted to catch up to the SUV. Brackhahn pulled the vehicle over because
he wanted to determine if the driver were intoxicated. He activated the overhead lights which in turn
activated the in-car video system. The Ford Excursion pulled over, and Brackhahn saw that it had
Georgia license plates and three occupants inside. Robinson approached the driver’s side while
Brackhahn approached the passenger’s side and motioned for him to roll down the window. 
Appellant was driving and he had a New York driver’s license bearing the name “Ramin Sharif.” 
Robinson asked Appellant to step out of the vehicle and back to the front of the patrol car. After
Robinson informed Appellant why he had been stopped, Appellant was asked the purpose of his trip. 
Appellant told Robinson that the vehicle was a rental and showed him the contract. Appellant then
explained that he was traveling to Los Angeles to visit family and buy Christmas presents. The
family was named “Amon” but he did not know where they lived. He intended to call them once he
arrived in Los Angeles. Brackhahn thought this was unusual since Appellant was traveling coast to
coast without specific directions. Appellant also told him that the front passenger was his cousin and
that the back passenger was his uncle. Since Brackhahn saw no impairment of the driver, he
intended to give him a warning. 
            Robinson then ran the radio checks on Appellant, and Brackhahn continued to talk to
Appellant about the trip. Out-of-state checks take longer, especially for states with larger
populations, including New York. Appellant was becoming nervous, his hands were shaking, and
he was having difficulty speaking. Brackhahn explained that it was not unusual for someone to
initially be nervous when stopped but that the nervousness usually subsides after being told why the
stop was made. However, Appellant’s nervousness escalated as Brackhahn’s questions became more
pointed. Further, Appellant volunteered the fact that he had been arrested for murder and selling
drugs and had been released from jail on the murder charge six months ago. At that point,
Brackhahn believed Appellant was being deceptive and trying to hide something. Due to his
training, Brackhahn knew that Los Angeles was a cocaine hub and that as a result of increased
security at airports, there had been an increase in illicit currency and drug trafficking across the
country. 
            Brackhahn then questioned the passengers. The front passenger was asked about the purpose
of the trip. He gave information different from Appellant, furthering Brackhahn’s suspicions. The
back passenger gave information that conflicted with both the other passenger and Appellant. He
found both passengers unusually nervous. The passengers were identified using their licenses and
a warrant check was also run on them. Brackhahn then believed that criminal activity was afoot. 
            Brackhahn returned to the patrol car to speak to Appellant and told Robinson that the
passengers’ stories conflicted with each other’s and with Appellant’s. He asked Appellant if there
were any guns, drugs, or large sums of money in the vehicle. Appellant stated no, and Brackhahn
asked for consent to search the vehicle. Appellant did not answer but motioned to the vehicle with
both hands up. Brackhahn and Robinson believed Appellant consented to the search with this
gesture, but it was not visible on the in-car videotape. Appellant acknowledged that he might have
made such a gesture but did not remember. 
            Appellant was not offered a written consent form, was not told he could refuse consent, and
was not asked if he understood what consent meant He testified that he did not know he could refuse
consent or withdraw consent at any time. Brackhahn thanked Appellant for his cooperation and
asked him to step to another area for trooper safety. 
            Brackhahn then searched the vehicle starting with the right front passenger side. He
discovered some rolling papers and blunts commonly used for smoking marijuana in the middle
section. At that point, Brackhahn believed there was marijuana in the vehicle and started searching
for contraband. In his search of the rear of the vehicle, Brackhahn found a Wal-Mart bag holding
$65,000 in cash wrapped in rubber bands in $10,000 bundles. Brackhahn believed the currency was
drug money either to purchase contraband or made in payment for contraband. 
            All three men were handcuffed for trooper safety and Brackhahn read Appellant his rights. 
The detention lasted approximately thirty-five to forty minutes. The men were transported to the
police station a few blocks away. At the station, a drug dog searched the vehicle and alerted to the
money. When asked, Appellant said that he planned to use the money to buy production equipment
for a record company in Los Angeles. Officers found cocaine on his person. 
MOTION TO SUPPRESS
            In his sole point of error on appeal, Appellant challenges the denial of his motion to suppress. 
He offers four reasons why the trial court erred: (1) the troopers did not have a valid reason for
stopping him; (2) they exceeded the scope of their detention; (3) he did not consent to the search;
and (4) the currency and cocaine seized by the troopers were “fruit of the poisonous tree.”
Standard of Review
            The denial of a motion to suppress is reviewed for an abuse of discretion. Oles v. State, 993
S.W.2d 103, 106 (Tex.Crim.App. 1999). There is an abuse of discretion “when the trial judge’s
decision was so clearly wrong as to lie outside that zone within which reasonable persons might
disagree.” Cantu v. State, 842 S.W.2d 667, 682 (Tex.Crim.App. 1992); Montgomery v. State, 810
S.W.2d 372, 391 (Tex.Crim.App. 1990)(op. on reh’g).
            The trial court’s findings of fact are given “almost total deference,” and in the absence of
explicit findings, the appellate court assumes the trial court made whatever appropriate implicit
findings are supported by the record. Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex.Crim.App.
2000); Guzman v. State, 955 S.W.2d 85, 89-90 (Tex.Crim.App. 1997). However, the application
of the relevant law to the facts, including Fourth Amendment search and seizure law, is reviewed
de novo. Carmouche, 10 S.W.3d at 327. When the facts are undisputed and we are presented with
a pure question of law, de novo review is proper. Oles, 993 S.W.2d at 106. Thus, for example, when
the issue to be determined on appeal is whether an officer had probable cause, “the trial judge is not
in an appreciably better position than the reviewing court to make that determination.” Guzman, 955
S.W.2d at 87. Therefore, although due weight should be given to the inferences drawn by trial
judges and law enforcement officers, determinations of matters such as reasonable suspicion and
probable cause should be reviewed de novo on appeal. Id., citing Ornelas v. United States, 517 U.S.
690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996).
Validity of the Traffic Stop
            An officer’s decision to stop a vehicle is reasonable where he has probable cause to believe
that a traffic violation has occurred. Whren v. U.S., 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135
L.Ed.2d 89 (1996). Traffic violations committed in an officer’s presence provide probable cause to
stop a vehicle and detain its driver. Garcia v. State, 827 S.W.2d 937, 944 (Tex.Crim.App. 1992). 
Troopers Brackhahn and Robinson testified that Appellant made three unsafe lane changes and
passed a vehicle on the right. In so doing, Appellant committed traffic violations in the officers’
presence and they had probable cause to stop him. See Tex.Transp.Code Ann. § 545.060(a)
(Vernon 1999). 
Investigatory Detention
            A routine traffic stop resembles an investigative detention. Berkemer v. McCarty, 468 U.S.
420, 439, 104 S.Ct. 3138, 3149-50, 82 L.Ed.2d 317 (1984); State v. Cardenas, 36 S.W.3d 243, 246
(Tex.App.--Houston [1st Dist.] 2001, pet. ref’d). Investigative detentions must be reasonably related
in scope to the circumstances that justified the interference in the first place. Davis v. State, 947
S.W.2d 240, 244 (Tex.Crim.App. 1997). To determine the reasonableness of an investigative
detention, we apply the Terry test: (1) whether the officer’s action was justified at its inception; and
(2) whether it was reasonably related in scope to the circumstances that justified the initial
interference. See Terry v. Ohio, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968);
Davis, 947 S.W.2d at 244.
            An investigative detention must be temporary and last no longer than necessary to verify or
dispel the officer’s suspicion. Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325-26, 75
L.Ed.2d 229 (1983); Davis, 947 S.W.2d at 244. Once an officer has concluded his investigation of
the traffic violation, he can no longer lawfully detain or question the driver unless he has reasonable
suspicion to believe another offense is being committed. See Davis, 947 S.W2d at 245. During a
traffic stop, the officer has authority to check for outstanding warrants and request: (1) a driver’s
license; (2) insurance papers; and (3) identification. Id. The officer may also ask about the driver’s
destination and purpose of travel. Powell v. State, 5 S.W.3d 369, 377 (Tex.App.--Texarkana 1999,
pet. ref’d), cert. denied, 529 U.S. 1116, 120 S.Ct. 1976, 146 L.Ed.2d 805 (2000). He may rely on
all of the facts ascertained during the course of his contact with a defendant to develop articulable
facts that would justify a continued detention. Id.; Sims v. State, 98 S.W.3d 292, 295 (Tex.App.--Houston [1st Dist.] 2003, pet. ref’d). 
            Appellant complains that when the troopers determined he was not impaired, they should
have issued a warning and let him go. But the officers were justified in running a check on
Appellant for outstanding warrants and asking the purpose of his trip. Since Appellant had a New
York driver’s license, the check took longer than usual. Due to Appellant’s nervousness and his
statements about the purpose of his trip, the troopers became suspicious that criminal activity was
occurring, and their continued detention of Appellant was justified. It does not appear that the
troopers used dilatory tactics to detain him any longer than was necessary.
Consent to Search
            Under the Fourth and Fourteenth Amendments to the United States Constitution, a search
conducted without a warrant issued with probable cause is per se unreasonable. Schneckloth v.
Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). Consent to search is
one of the well-established exceptions to the constitutional requirements of both a warrant and
probable cause. Id. at 219, 93 S.Ct. at 2043-44, 36 L.Ed.2d 854; Carmouche, 10 S.W.3d at 331. The
test for a valid consent to search requires the consent to be voluntary, and voluntariness is a question
of fact to be determined from all the circumstances. Schneckloth, 412 U.S. at 248-49, 93 S.Ct. at
2059; Carmouche, 10 S.W.3d at 331. For consent to be voluntary, it must not be coerced by explicit
or implicit means, by implied threat, nor by covert force. Carmouche, 10 S.W.3d at 331. Under the
Texas Constitution, the State is required to prove by clear and convincing evidence that consent was
voluntarily given. State v. Ibarra, 953 S.W.2d 242, 243 (Tex.Crim.App. 1997). 
            Voluntary consent to search can be given by a hand gesture as well as verbally or in writing. 
See McAllister v. State, 34 S.W.3d 346, 351 (Tex.App.--Texarkana 2000, pet. ref’d)(concluding that
defendant consented to a search when, after the officer told defendant he had to conduct a pat-down
search, defendant raised his hands indicating the officer was free to proceed); Kendrick v. State, 93
S.W.3d 230, 234 (Tex.App.--Houston [14th Dist.] 2002, pet. ref’d)(finding that when the officer
requested appellant’s permission to conduct a pat-down, appellant indicated his consent by standing
up and raising his hands). Whether a defendant knew he had the right to refuse consent is one factor
to examine in determining voluntariness. Carmouche, 10 S.W.3d 332-33. 
            Here, Brackhahn asked Appellant whether he had any guns, drugs, or large sums of money
in the vehicle. When Appellant said no, Brackhahn asked for permission to search the vehicle. 
Appellant did not verbally consent but instead threw up his arms in the direction of the vehicle. 
Brackhahn and Robinson both interpreted this gesture as giving consent. Appellant’s gesture could
not be seen on the videotape in the patrol car, but both Brackhahn and Robinson described
Appellant’s gesture and demonstrated the gesture to the court. Appellant testified that he may have
made such a gesture but did not remember. The troopers did not tell Appellant he could refuse to
give consent, and Appellant testified he did not know he could refuse consent. Appellant argues that
his consent was involuntary since the troopers had already exceeded the scope of their detention.
            We conclude that the State met its burden of demonstrating by clear and convincing evidence
that Appellant consented to a search of his vehicle. No evidence suggests that the troopers drew their
weapons or that Appellant was threatened by the officers in any way. Because the troopers did not
exceed the scope of their detention, we conclude that Appellant freely and voluntarily consented to
the search. 
“Fruit of the Poisonous Tree” Doctrine
            Evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject
to exclusion. Segura v. U.S., 468 U.S. 796, 804, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599 (1984). The
question to be resolved is whether the evidence was obtained by exploitation of the initial illegality
or instead by means sufficiently distinguishable to be purged of the primary taint. Id.
            Having determined that the troopers made a valid stop for traffic violations, legally detained
Appellant after developing reasonable suspicion that criminal activity was afoot, and received free
and voluntary consent to search his vehicle, we conclude there was no unconstitutional search or
seizure. We find no error in the denial of the motion to suppress. We overrule his sole point and 
affirm the judgment of the trial court.


May 12, 2005                                                              
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)