

NUMBER 13-15-00310-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SANTOS SALINAS, JR.,                                                      Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

On appeal from the 424th District Court
of Burnet County, Texas.

# MEMORANDUM OPINION

Before Justices Benavides, Perkes, and Longoria
Memorandum Opinion by Justice Longoria

Appellant Santos Salinas Jr. challenges his conviction for evading arrest, a state jail felony.[1]  *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(1) (West, Westlaw through 2015 R.S.).  We affirm.

## I. BACKGROUND

Officer Jeremy Stewart testified that he and Officer Bilski[2] were driving down Polk Street in Burnet in a marked police vehicle car on the night of December 12, 2013.[3] Shortly before midnight, Officer Stewart noticed a car parked in the front parking lot of a car wash flash its headlights as the officers passed by.  Deciding to investigate, Officer Stewart turned into the parking lot and drove towards the parked car.  Appellant exited the vehicle as the officers approached and started walking quickly towards their vehicle. Appellant, who appeared to Officer Stewart to be talking on a cell phone as he approached, was pointing animatedly in the direction behind the officers.  Officer Stewart "advised [appellant] to go back to the vehicle."  Appellant complied and retraced his steps to stand beside the parked car.

Both officers exited their vehicle and approached appellant.  Officer Stewart spoke with appellant beside the car for a few seconds until Officer Bilski went around to the other side of the vehicle to speak to the driver.  At that time, Officer Stewart and appellant moved to the front of the vehicle.  Officer Stewart asked appellant what he was doing

---

[1] This case is before the Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2015 R.S.).

[2] Officer Bilski's full name does not appear in the record.  Her name is spelled differently in the briefs and in the record.  We use the spelling of her surname that appears in the reporter's record.

[3] We draw our summary of the background facts from the testimony of Officer Jeremy Stewart and from viewing the dashboard camera video from his police vehicle.  The video, which has no audio component, was admitted into evidence without objection.

there that night and mentioned the flashed headlights. Appellant apologized for the flash and replied that he and the person in the driver's seat were waiting for someone to pick them up. Officer Stewart next asked appellant if he had anything illegal on his person. Appellant replied that he had nothing illegal and agreed to Officer Stewart's request to perform a pat down search. Approximately two minutes elapsed from the time Officer Stewart parked the patrol car to the time that he began the pat down frisk.

During the search, Officer Stewart testified that he felt a "bulge" in appellant's left front pocket. Officer Stewart asked appellant about it, and appellant replied that it was "some pills that he had gotten from his residence." Officer Stewart asked appellant's permission to remove the bottle. Appellant agreed, and Officer Stewart recovered a prescription pill bottle with the label removed and full of medication. Officer Stewart attempted to place appellant under arrest, but appellant resisted and ran off after a brief struggle. Both officers pursued but were unable to arrest appellant that night.

Following his capture, appellant was indicted for evading arrest, a Class A misdemeanor enhanced to a state jail felony by a prior conviction for the same offense. *See id.* At trial, the State admitted into evidence the pill bottle and the pills, as well as the video recording from the dashboard camera in Officer Stewart's vehicle.[4] Officer Stewart testified regarding the interaction with appellant, but appellant and Officer Bilski did not.

The jury returned a verdict of guilty. Following the sentencing hearing, the jury found two additional enhancement allegations in the indictment to be true and assessed a sentence of five years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice, a $2,500 fine, and courts costs. *See id.* § 12.425(a)

---

[4] There is no evidence in the record that appellant was charged for possession of the medication Officer Stewart found in the pill bottle.

3

(West, Westlaw through 2015 R.S.) (providing that a state jail felony is punished as a third-degree felony if it is shown on trial of the offense that the defendant had been previously convicted of two state jail felonies). This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant asserts in his first issue that the evidence is insufficient to support his conviction because the State did not prove that Officer Stewart was attempting to lawfully arrest appellant when he fled.

### A. Standard of Review

We review the sufficiency of the evidence by considering all of the evidence in the light most favorable to the verdict and determining whether any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *McKay v. State*, 474 S.W.3d 266, 269 (Tex. Crim. App. 2015) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In this review, the jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Id.* Our role is to ensure that the State presented sufficient evidence supporting the jury's verdict. *Id.* at 269–70. If the record supports conflicting inferences, we presume that the jury resolved the conflict in favor of its verdict and defer to that determination. *Id.* at 270; *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014).

We measure the sufficiency of the evidence against the essential elements of the offense as defined by a hypothetically correct jury charge for the case. *Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013). The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict its theories of liability, and

4

adequately describes the particular offense for which the defendant was tried. *Id.* (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). In this case, the hypothetically correct charge required the State to prove that appellant: (1) intentionally; (2) fled from a person he knew was a peace officer; (3) who was attempting to lawfully arrest or detain him. *See* Tex. Penal Code Ann. § 38.04(a); *see also Thompson v. State*, 426 S.W.3d 206, 209 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). We review the jury's determination that the attempted arrest was lawful for evidentiary sufficiency and not as a suppression issue. *Woods v. State*, 153 S.W.3d 413, 415 (Tex. Crim. App. 2005); s*ee York v. State*, 342 S.W.3d 528, 544 (Tex. Crim. App. 2011) (observing that under the evading arrest statute "litigating the validity of the seizure as a suppression issue is inappropriate").

### B. Applicable Law

There are three distinct types of police-citizen interactions: a consensual encounter, an investigative detention, and an arrest. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013). Consensual encounters are not seizures that require scrutiny under the Fourth Amendment because "[p]olice officers are as free as any other citizen to approach citizens and ask for information or cooperation." *Id.* The encounter is consensual as long as the citizen remains free to refuse the officer's requests or terminate the encounter. *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011). However, an encounter becomes a seizure—and warrants Fourth Amendment scrutiny— if the officer restrains the citizen's liberty through physical force or a showing of authority. *Id.*

A seizure which falls short of a full custodial arrest is an investigative detention

which must be supported by reasonable suspicion. *Id.* Reasonable suspicion exists where the officer has "specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity." *Brodnex v. State*, No. PD-1087-14, ___ S.W.3d ___, ___, 2016 WL 1128274, at *3 (Tex. Crim. App. Mar. 23, 2016). Even though reasonable suspicion requires only a "minimal level of justification" for a seizure, it is greater than an "inarticulable hunch or mere good faith suspicion" of criminal activity. *Id.* Facts which are innocent enough when taken individually can support reasonable suspicion if those facts reasonably suggest criminal activity when considered together. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). In other words, when considering whether reasonable suspicion existed, the "relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts." *Id.* (quotation marks omitted).

### C. Discussion

Appellant argues that the evidence is insufficient for the jury to conclude that the attempted arrest was lawful because his initial interaction with the officers was a detention unsupported by reasonable suspicion. *See Rodriguez v. State*, 578 S.W.2d 419, 420 (Tex. Crim. App. [Panel Op.] 1979) (holding that if a temporary detention was illegal, any subsequent attempted arrest would be unlawful for purposes of the evading arrest statute). The State responds that the evidence is sufficient for the jury to find that the interaction was a consensual encounter and, alternatively, that the investigative detention was supported by reasonable suspicion.

Assuming that appellant was detained, we agree with the State that the detention

6

was supported by reasonable suspicion.  Viewing the evidence in the light most favorable to the jury's verdict, Officer Stewart had specific, articulable facts which could support a reasonable suspicion of criminal activity at the moment he told appellant to stand beside the car.  Specifically, Officer Stewart knew that a parked car in a deserted area had flashed its lights as the officers' police vehicle passed.[5]  When the officers drove up to the car to investigate, appellant exited the vehicle and quickly approached while pointing "animatedly" in the direction from which the officers had just driven.  Officer Stewart testified that in his experience, that behavior could indicate that a person was trying to distract the police from investigating criminal activity.  Appellant is correct that these facts could well have an innocent explanation, but we "need not rule out the possibility of innocent conduct" to determine that reasonable suspicion exists.  *See Jaganathan v. State*, 479 S.W.3d 244, 248 (Tex. Crim. App. 2015) (citing *United States v. Arvizu*, 534 U.S. 266, 277 (2002)).  We conclude that the facts known to Officer Stewart enabled him to reasonably conclude that something criminal had just happened, was happening, or was about to happen in the parked car which appellant did not want him to witness.  *See Derichsweiler*, 348 S.W.3d at 914.

However, a detention may last no longer than necessary to fulfill its purpose. *Balentine v. State*, 71 S.W.3d 763, 770 (Tex. Crim. App. 2002).  Appellant argues that before Officer Stewart moved appellant to stand in front of the vehicle, he had already questioned appellant about what he was doing there that night and received an innocent

---

[5] Appellant argues that there are no flashes from the parked car's headlights on the video. However, the dashboard camera is mounted facing forward and Officer Stewart activated his turn signal almost as soon as the parked car is no longer in view.  The jury could have reasonably inferred that the flash came at that moment, and we may not disturb that decision.  *See McKay v. State*, 474 S.W.3d 266, 269 (Tex. Crim. App. 2015).

explanation that should have been sufficient to resolve his suspicions of criminal activity. Therefore, appellant argues that the detention was unreasonably extended when Officer Stewart moved appellant in front of the car. However, Officer Stewart testified at trial that he asked appellant "what they were doing, and [appellant] advised me that he was waiting on somebody to pick him up and that they had passed" after Officer Bilski went to contact the driver and appellant and Officer Stewart had moved to stand in front of the car. At that time, Officer Stewart asked appellant about the flashed headlights and appellant apologized. The video supports Officer Stewart's account because Officer Stewart spoke to appellant beside the parked car for approximately ten seconds but spoke with him in front of the vehicle for substantially longer. Based on the video and Officer Stewart's testimony, the jury could have reasonably concluded that Officer Stewart had not confirmed or dismissed his suspicions until after his discussion with appellant in front of the vehicle. *See McKay*, 474 S.W.3d at 269.

Even if appellant was still validly detained, the existence of reasonable suspicion to support the investigative detention does not necessarily mean that Officer Stewart was justified in performing a pat down frisk. A pat down frisk is justified only when the officer both reasonably suspects criminal activity and that the citizen is armed. *See Wade*, 422 S.W.3d at 669; *Castleberry*, 332 S.W.3d at 467. However, Officer Stewart testified that appellant consented to the pat down search. Consent is a well-established exception to the constitutional restrictions on a search, *see Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000), and it is the State's burden to demonstrate voluntary consent by clear and convincing evidence. *State v. Ibarra*, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997) (en banc). Officer Stewart testified that appellant verbally consented to his request

8

to search him, and the dash cam video shows that appellant turned his back and raised his hands just before Officer Stewart began the search. Officer Stewart's testimony and the video from the dashboard camera are sufficient evidence for the jury to conclude that the State met its burden of showing appellant's voluntary consent to the pat down frisk by clear and convincing evidence. *See Kendrick v. State*, 93 S.W.3d 230, 234 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (concluding that the trial court properly denied a motion to suppress filed by a defendant who was validly detained when he consented to a pat down search in part because the defendant willingly stood up and raised his hands in response to the officer's request).

In sum, we hold that the investigative detention was not illegal because Officer Stewart had specific, articulable facts supporting a conclusion that criminal activity had just occurred, was occurring, or was about to occur. *See Rodriguez*, 578 S.W.2d at 420. Further, the State carried its burden to show that the pat-down search of appellant was consensual. *See Kendrick*, 93 S.W.3d at 234. Thus, the evidence was sufficient to enable the jury to conclude that the attempted arrest of appellant was lawful. *See* TEX. PENAL CODE ANN. § 38.04(a). We overrule appellant's first issue.[6]

### III. JURY CHARGE ERROR

By his second issue, appellant asserts that the trial court reversibly erred by giving a jury instruction under article 38.23(a) of the Texas Code of Criminal Procedure that misstated the law governing investigative detentions. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West, Westlaw through 2015 R.S.).

---

[6] We do not address the State's argument that the interaction between appellant and the officers was a consensual encounter because it is unnecessary in light of our holding that the detention was supported by reasonable suspicion. *See* TEX. R. APP. P. 47.1.

9

### A. Applicable Law

When addressing a jury charge issue we determine if there is error in the charge and, if so, evaluate that error for harm. *Phillips v. State*, 463 S.W.3d 59, 64–65 (Tex. Crim. App. 2015). Whether appellant preserved error determines the degree of harm necessary to warrant reversal. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). If the error was preserved, we must reverse if the appellant suffered "some harm" from the error. *Id.* If appellant did not preserve error, we will reverse only if the error was fundamental and he suffered "egregious harm" from it. *Id.*

### B. Analysis

The abstract portion of the jury charge is divided into sections for general principles of law and law that is specifically applicable to the case. In the later section, under the subheading for "Lawful/Unlawful Detention," the trial court gave the following instruction:

> You are instructed that no evidence obtained by an officer or other person in violation of any provision of the constitution or laws of the State of Texas, or the Constitution or laws of the United States of America, shall be admitted in evidence against the accused in the trial of any criminal case. You are further instructed that our laws permit the stop, detention, and limited search of a person by a peace officer without a warrant when the police officer has an **articulable suspicion**. Therefore, if you believe beyond a reasonable doubt that the officer lawfully obtained the evidence, you may consider it, and continue deliberations. However, if you have a reasonable doubt that the peace officer unlawfully obtained the evidence, you may not consider such evidence for any purpose whatsoever and you will return a verdict of not guilty.

(Emphasis added). This instruction is the only mention of the legality of the detention in the jury charge.

Appellant sees two errors in this instruction. First, he argues that the part of the instruction in bold should have read "reasonable suspicion," which is the correct standard for when the law authorizes a detention. Second, appellant argues that the instruction

10

omitted any explanation that the requirement of "reasonable" suspicion means that an officer must have specific, articulable facts that a person is, has been, or soon will be engaged in criminal activity.  Assuming without deciding that the instruction was error, we conclude that appellant did not suffer harm from it.

### 1. Preservation of Error

We first address preservation of error.  Appellant argues that we should apply the "some harm" standard for preserved error because he timely filed a requested jury instruction with the trial judge.  *See* TEX. CODE CRIM. PROC. ANN. art. 36.15 (West, Westlaw through 2015 R.S.) (providing that a requested special instruction in writing filed with the trial judge preserves any error reflected in that instruction).  Appellant admits that his requested instruction was erroneous because it would have instructed the jury that a detention must be supported by "probable cause."  However, he argues that the request preserved error when combined with the numerous arguments he made on the issue of reasonable suspicion during the trial.  *See Francis v. State*, 36 S.W.3d 121, 123 (Tex. Crim. App. 2000) (holding that a requested charge that was incorrect on the law preserved error when combined with multiple objections during trial on the same issue).

We disagree that appellant preserved error.  Appellant requested an instruction on the law authorizing a seizure but, after the instruction was added to the charge, he stated at the charge conference that he had no objections to the charge.  The defendant in *Francis*, by contrast, specifically informed the trial court of the precise error he raised on appeal:  he asked the trial court to require the State to elect a means of committing the charged offense, submitted a proposed charge on the same issue, and specifically objected to the court's charge on the same grounds after his proposed charge was

11

refused. *See id.* at 122–23. Appellant did not preserve error here because he never brought his issue with the wording of the instruction to the trial court's attention. *See id.*; *see also Chase v. State*, 448 S.W.3d 6, 11 (Tex. Crim. App. 2014) (observing that the general principle of error preservation that the party must inform the trial judge about "what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it" applies to jury charge issues). Accordingly, we will evaluate appellant's issue for egregious harm. *See Reeves*, 420 S.W.3d at 816.

### 2. Egregious Harm

We consider four factors when evaluating whether a defendant suffered egregious harm from jury charge error: (1) the entire jury charge; (2) the state of the evidence, including any contested issues; (3) the arguments of counsel; and (4) any other relevant factors contained in the record as whole. *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) (citing *Almanza v. State*, 686 S.W.3d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). Egregious harm is a difficult standard to meet, and we determine whether an appellant suffered egregious harm on a case-by-case basis. *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). A finding of egregious harm requires that the appellant suffered "actual, rather than theoretical, harm." *Warner*, 245 S.W.3d at 461. "Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490.

### a. The Whole Jury Charge

12

First, we consider the entire jury charge. *See Warner*, 245 S.W.3d at 461. Appellant notes that the jury charge is silent on how the jury was to determine whether the State proved that the attempted arrest of appellant was "lawful." Appellant argues that this omission compounded the error in the article 38.23 instruction because it effectively prevented the jury from determining whether the State proved that element of the offense. *See Riley v. State*, 447 S.W.3d 918, 925 (Tex. App.—Texarkana 2014, no pet.) (holding that charge error which allowed the jury to convict the appellant of capital murder without finding that the State proved an essential element of that offense deprived the defendant of a valuable right). However, the article 38.23 instruction here was wholly self-contained. "It is the application paragraph of the charge, not the abstract portion, that authorizes a conviction" or acquittal. *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012); *see Vasquez v. State*, 389 S.W.3d 361, 366–67 (Tex. Crim. App. 2012). The instruction directed the jury to stop its deliberations and render a judgment of acquittal if it believed or had a reasonable doubt that evidence was obtained illegally, but it did not refer to the application paragraph. Further, giving an incorrect instruction in the abstract portion of the charge generally does not rise to the level of egregious harm unless "the instruction is an incorrect or misleading statement of a law that the jury must understand in order to implement the commands of the application paragraph." *Crenshaw*, 378 S.W.3d at 466*. The application paragraph here tracked the language of the indictment and the penal code and required the jury to find that the State proved each of the essential elements of the offense beyond a reasonable doubt. *See* Tex. Penal Code Ann. § 38.04(a). The application paragraph did not mention the issue of the legality of the initial detention or require the jury to apply the erroneous standard of "articulable

13

suspicion." *See Crenshaw*, 378 S.W.3d at 466–67. This factor weighs against egregious harm.

### b.  State of the Evidence

Regarding the state of the evidence—the second *Almanza* factor—we agree with appellant that the parties mainly contested the issue of the legality of the attempted arrest. Appellant strongly contested the State's evidence, but contested evidence alone "may, but does not necessarily, give rise to [a] finding of egregious harm." *Villarreal v. State*, 453 S.W.3d 429, 436 (Tex. Crim. App. 2015). We agree that the contested evidence weighs in favor of egregious harm because this was the central issue in the case, but we afford this factor less weight because "the presence of an [article 38.23] instruction in the first instance means that the issue was a contested one." *Gelinas v. State*, 398 S.W.3d 703, 708–09 (Tex. Crim. App. 2013) (plurality op.). We conclude the second *Almanza* factor weighs slightly in favor of egregious arm.

### c.  Arguments of Counsel

The third *Almanza* factor looks to the arguments of counsel. "Under this factor, we look to whether any statements made by the State, appellant, or the court during the trial exacerbated or ameliorated error in the charge." *Arrington v. State*, 451 S.W.3d 834, 844 (Tex. Crim. App. 2015). Appellant's counsel used his closing argument to focus the jury's attention on the element that the attempted arrest must have been lawful, and specifically pointed the jury to the "articulable suspicion" language that appellant now challenges on appeal. However, his counsel then argued to the jury that the term "articulable suspicion" was insufficient because it was too general and "could be anything." Appellant's counsel did not use the term "reasonable suspicion," but the theme of the remainder of his closing

argument was that Officer Stewart's suspicions of criminal activity may have been articulable but were not reasonable. Even if the application paragraph required the jury to understand the meaning of "articulable suspicion," appellant's closing argument would have ameliorated the error to an extent. The State's closing argument did not exacerbate the error because the State made the same argument that it now makes on appeal: the interaction was consensual, appellant consented to the pat down search, and Officer Stewart acquired probable cause to arrest when he discovered the pill case. The State's argument was not geared towards proving that a detention was justified by either "articulable" or "reasonable" suspicion.

On balance, after considering any statements made by the State, appellant, or the court, we conclude that the third *Almanza* factor weighs against a finding of egregious harm. *See Arrington*, 451 S.W.3d at 844.

### d. Other Relevant Factors

The final *Almanza* factor requires us to consider any other relevant factors present in the record as a whole. *See Warner*, 245 S.W.3d at 461. Under this factor, appellant argues that the record of voir dire revealed that the potential jurors "had a great deal of difficulty understanding that a person can run from an [*sic*] police officer and still not commit the offense." After questioning potential juror 12 and 32, appellant asked the other venire members in reference to running from police: "[w]ho agrees with [jurors] 12 and 32 that basically you should stop no matter what, and that there is no issue as to whether or not it's a lawful detention or not?" Four of the venire members who agreed were eventually placed on the jury. Appellant argues that the jurors' skepticism

compounded the error because the jurors needed a correct article 38.23 instruction on reasonable suspicion if they were to judge appellant's case fairly.

We disagree that the venire's skepticism contributed to egregious harm. First, none of the venire stated that they would be unable or unwilling to consider whether the State proved that Officer Stewart was attempting to lawfully arrest appellant at the time appellant fled from him. Second, as we explained in greater detail above, even if the article 38.23 instruction in this case instructed the juror on "reasonable suspicion," the application paragraph did not incorporate that definition or require them to apply it. *See Crenshaw*, 378 S.W.3d at 466.

Under this factor we also note that appellant was not entitled in any event to an article 38.23 instruction that directed the jury to return a verdict of acquittal. An instruction under article 38.23(a) is limited to directing the jury to disregard any evidence that it believes or has a reasonable doubt was obtained in violation of that article. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a); *Serrano v. State*, 464 S.W.3d 1, 7 (Tex. App.— Houston [1st Dist.] 2015, pet. ref'd) (observing that a defendant's right to the submission of an article 38.23 jury instruction "is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible" (quotation marks omitted)). Even assuming that the jury would have interpreted "articulable suspicion" as a standard below "reasonable suspicion," the instruction essentially gave the jury an extra opportunity to acquit appellant. Thus, the very presence of the instruction in the jury charge was of some benefit to appellant. On balance, we conclude this factor weighs against egregious harm.

### e. Summary

16

In sum, three of the four *Almanza* factors weigh against a finding of egregious harm. Under the facts of this case, the erroneous article 38.23 jury instruction did not affect the very basis of the case, deprive the appellant of a valuable right, vitally affect a defensive theory, or make the case for conviction significantly more persuasive. *See Taylor*, 332 S.W.3d at 490. We overrule appellant's second issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.


Nora L. Longoria
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
5th day of May, 2016.