

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---
### NO. PD-1133-14
---

**CODY WAYNE MCKAY, Appellant**

**v.**

**THE STATE OF TEXAS**

---
### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### HUNT COUNTY
---

**MEYERS, J., delivered the opinion of the Court in which JOHNSON, ALCALA, YEARY and NEWELL, JJ., joined. HERVEY, J., filed a dissenting opinion in which KELLER, P.J., and KEASLER and RICHARDSON, JJ., joined.**

### O P I N I O N

Appellant, Cody Wayne McKay, was convicted of injury to a child with the culpable

mental state of criminal negligence after spilling hot water on the back of the two-year-old

victim. Appellant was sentenced to two years' imprisonment, which was then suspended, and

he was subsequently placed on community supervision for five years. Appellant appealed ,

arguing that there was insufficient evidence to support his conviction. The court of appeals

affirmed the judgment of the trial court. *McKay v. State*, No. 06-14-00003-CR, 2014 Tex. App. LEXIS 8743 (Tex. App.–Texarkana Aug. 8, 2014) (mem. op., not designated for publication). We granted Appellant's petition for discretionary review to consider whether the court of appeals erred in determining there was sufficient evidence of Appellant's criminal negligence.

## BACKGROUND

Appellant had lived with his girlfriend, Brandee Casteel, and her two daughters for almost three months when the accident occurred. Because Appellant and Casteel had varying schedules, on the night of the accident, he was cooking dinner for himself and T. J., Casteel's two-year-old daughter. While Appellant was making dinner in the narrow galley kitchen, T. J. was playing in the house. Appellant turned around with a pot of hot green beans and, not knowing that T. J. had come into the kitchen, bumped into her and spilled hot water and beans down T. J.'s back. Shortly after, Casteel arrived home, and they dressed the burn. Casteel monitored the burn for the next two days, but when it began to blister and pop, she took T. J. to the hospital. At the hospital, Casteel told the nurses and a police officer that she was the one who had spilled the water on T. J. However, Casteel later explained that it was actually Appellant who had spilled the water on T. J.

T. J. suffered second-degree burns over a large portion of her back, but eventually made a full recovery. Appellant was initially charged with injury to a child causing serious bodily injury. However, the indictment was amended and the charge was reduced to injury

to a child causing bodily injury, alleging an intentional mental state, with lesser-included offenses down to criminal negligence.

At trial, the State presented the testimony of Child Protective Services workers, as well as that of nurses and doctors who worked on T. J., a neighbor who babysat T. J., and Brandee Casteel. In trying to prove that Appellant intentionally burned T. J., the State alleged there was a pattern of abuse, evidenced by existing bruises on T. J. that the medical staff found when she was brought in to the hospital. The State also emphasized the amount of time between the accident and when T. J. was actually taken to the hospital. Furthermore, the State introduced over 1,000 pages of reports from the Texas Department of Family and Protective Services (DFPS), that were admitted into evidence but were not read to the jury. As discussed by the court of appeals, the State's theory was that Appellant intentionally injured T. J. and, therefore, there was little to no direct evidence presented on Appellant's criminal negligence.

Appellant was convicted of injury to a child through an act of criminal negligence and sentenced to two years' imprisonment. He appealed, arguing that there was insufficient evidence to support his conviction. *Id*. at *1. The court of appeals reviewed the record for evidence that supported the finding of criminal negligence. *Id*. at *2. It noted that it was "troubling" that most parents who cook and move hot food or water from one place to another with small children nearby could be considered guilty of criminal negligence. *Id*. at *6-*7. However, the court of appeals pointed out, when Casteel first told investigators that she was the one who had spilled water on T. J., she also commented that T. J. was always "up

her butt." *Id*. at *7. Because of this comment, which was contained only within the DFPS reports admitted into evidence, the court of appeals reasoned that the jury could have concluded that this meant that T. J. was also always under Appellant's feet and, therefore, he should have known she would be close by while he was cooking. *Id*. at *8. With this reasoning and without discussing any other piece of evidence, the court of appeals held the evidence to be legally sufficient and affirmed Appellant's conviction. *Id*.

Justice Moseley dissented, pointing out that the statement from Casteel that the majority located was only a small part of a very lengthy DFPS report. *Id*. at *10 (Moseley, J., dissenting). He also disagreed with the majority's assumption that a child's conduct with her mother would be the same around another individual and asserted that there was no evidence T. J. was regularly underfoot of Appellant. *Id*. at *10-*11. He concluded that there was not sufficient evidence of criminal negligence to justify Appellant's conviction. *Id*. at *11.

## ARGUMENTS OF THE PARTIES

Appellant argues that no rational trier of fact could have found him guilty of criminal negligence and asserts that criminal negligence is a higher culpable mental state than ordinary negligence, in that "the carelessness required must be such that its seriousness would be apparent to anyone who shares the community's general sense of right and wrong." *Tello v. State*, 180 S.W.3d 150, 158 (Tex. Crim. App. 2005). Appellant states that the court of appeals appeared to reject all of the State's evidence and rely only on the one comment

from Casteel that was hidden in a 1,000 page document. He argues that this is a mere scintilla of evidence and, therefore, not enough to affirm his conviction.

Appellant also urges the Court to consider the position of Justice Moseley's dissent and notes that assuming a child acts the same around her parents as she does around third parties is too much of an evidentiary leap.

The State argues that the court of appeals made the correct decision and that we should not have granted Appellant's petition for discretionary review. It points out that the jury sent a note during deliberations requesting the evidence in the case, including the DFPS reports, and that the jury spent three additional hours deliberating after that point. The State asserts that Appellant's actions after the burn occurred indicate a guilty conscience and that there was testimony that his cooking deviated from an ordinary standard of care. This cumulation of evidence, the State argues, indicates that the evidence is sufficient to support Appellant's conviction.

## SUFFICIENCY OF THE EVIDENCE

When reviewing whether there was sufficient evidence to support a conviction, we look at the evidence presented in the light most favorable to the verdict and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury is the sole judge of the witnesses' credibility and of the weight to be given to their testimony and therefore, we defer to the jury's determinations on these matters rather than substituting our

own judgment. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The reviewing court's duty is to ensure that the State presented sufficient evidence of the offense and that the evidence supports the jury's verdict. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). When the evidence in the record can support conflicting inferences, we must assume that the jury resolved the conflict in favor of the prosecution, regardless of whether that resolution affirmatively appears on the record. *Brooks*, 323 S.W.3d at 900, n.13 (quoting *Jackson*, 443 U.S. at 326). However, if the evidence is so weak that it creates only a suspicion that a fact exists, then it is no more than a scintilla. *Matlock v. State*, 392 S.W.3d 662, 669 n.21 (Tex. Crim. App. 2013) (quoting *In re Campbell*, 343 S.W.3d 899, 904 n.6 (Tex. App.–Amarillo 2011, no pet.)).

In order to show that the evidence presented was legally sufficient to support a conviction of criminally negligent injury to a child, the State must prove that the defendant acted with criminal negligence and caused a child bodily injury. TEX. PENAL CODE § 22.04(a)(3). To prove criminal negligence, the State must show that the defendant should have been aware of a substantial and unjustifiable risk that the injury to the child would occur and that the failure to perceive this risk was a "gross deviation from the standard of care that an ordinary person would exercise." TEX. PENAL CODE § 6.03(d). In determining whether it was a gross deviation, the circumstances are viewed from the defendant's standpoint at the time the act occurred. *Id*. The cornerstone of criminal negligence is the defendant's failure to perceive the risk at all, rather than his perceiving the risk and ignoring it. *Montgomery*,

369 S.W.3d at 193 (citing *Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975)). In convicting a defendant of criminal negligence, a jury is determining that the defendant's failure to recognize the risk of the harm is so great that it warrants criminal punishment. *Id.* (citing *Tello v. State*, 180 S.W.3d 150, 158 (Tex. Crim. App. 2005)).

Therefore, in this case, the State must have proved that Appellant's actions of cooking hot items and moving around the kitchen with them created a substantial and unjustifiable risk to T. J., and that Appellant's failure to perceive this risk was far from the standard of care an ordinary person would exercise.

## ANALYSIS

At trial, the State presented evidence that it asserted would prove that T. J. suffered from a pattern of abuse and that Appellant had intentionally poured the hot water on her. The jury did not believe the State's theory that the spill was intentional, and it convicted Appellant of negligently causing T. J.'s injury. However, the only piece of evidence that the court of appeals found that could support this conviction was the statement from Casteel in the DFPS report. While the court of appeals held this statement to be sufficient to uphold Appellant's conviction, we do not.

We do not see how Casteel's statement that T. J. was always "up her butt"–meaning that T. J. was often under her feet–is relevant. As Justice Moseley discussed, there is a special relationship between parents and children, and children do not necessarily behave in the same way with their parents as they do with others. Appellant was not T. J.'s parent–he

was a friend who had lived with the family for less than three months. Casteel's statement did not indicate that T. J. was often underfoot of Appellant or any other caretaker. Nor did Casteel state that it was ever communicated to Appellant that T. J. was commonly underfoot and that he should take extra care because of this. Casteel's statement was only about herself and did not provide any evidence of T. J.'s behavior around any other individuals or of Appellant's knowledge that the child was commonly underfoot. Thus, we agree that "it takes too great a leap of logic" to assume that, because Casteel said that T. J. was usually under her feet, T. J. would have also often been under Appellant's feet. *McKay*, 2014 Tex. App. LEXIS 8743 at *10-11 (Moseley, J., dissenting). And although we assume that the jury resolved any conflicting inferences in favor of the prosecution, there was no such conflicting inference in this case at all. No reasonable inference can be drawn in regards to Appellant from Casteel's statement.

Further, Casteel made this statement to DFPS when she was still claiming that she had been the one who tripped over T. J. and spilled the water on her. The fact that the statement was made in the course of asserting a falsehood makes its probative value questionable.

Although the court of appeals stated that the jury was authorized to assume that T.J. was often underfoot of Appellant, this was not a reasonable inference to make. And with no evidence that T. J. acted the same way around her mother as she did around other individuals or caretakers, and with the questionable probative value of the statement itself, we hold that the statement is insufficient evidence for a reasonable jury to have found Appellant guilty of

criminal negligence. There was no evidence of some special risk or circumstance that could give rise to negligence and allow Appellant to be held criminally liable for simply moving food around in his kitchen while the child was home. Essentially, there was no substantial and unjustifiable risk for Appellant to have perceived, and, therefore, he cannot be punished for not perceiving it. Holding otherwise would criminalize the actions of most parents and caretakers in the State who must cook meals for their children every day. Therefore, the evidence was insufficient for a reasonable jury to have found beyond a reasonable doubt that Appellant failed to perceive a substantial and unjustifiable risk to T. J.. We hold that the court of appeals erred in holding otherwise.

## CONCLUSION

Without any showing that T. J. was often underfoot of Appellant or that Appellant knew T. J. would likely be under his feet, the evidence is insufficient to support Appellant's conviction of negligently causing injury to a child. For these reasons, we reverse the judgment of the court of appeals and vacate Appellant's conviction.

Delivered: November 4, 2015

Publish