**Ricky D. DAVIS, Appellant**

v.

**The STATE of Texas, State**

NO. 02–13–00468–CR

Court of Appeals of Texas, Fort Worth.

DELIVERED: April 28, 2016

---

1. 280 S.W.3d 425, 436–40 (Tex App.–Fort Worth 2009, pet. ref'd) (Dauphinot, J., dissenting).

David A. Pearson, IV, David A. Pearson, P.L.L.C., Fort Worth, TX, for Appellant.

Sharen Wilson, Criminal District Attorney; Debra Windsor, Assistant Criminal District Attorney, Chief of Post–Conviction; J. Eric Nickols, Assistant Criminal District Attorney, Tarrant County District Attorney's Office, Fort Worth, TX, for State.

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

## OPINION

TERRIE LIVINGSTON, CHIEF JUSTICE

Appellant Ricky D. Davis appeals his conviction for "Trafficking of Persons" (trafficking).[1] In two points, he contends that the evidence is insufficient to sustain the conviction and that the conviction violates due process because of a variance "between the manner and means in the indictment ... and the [S]tate's actual theory and proof at trial." We reverse appellant's conviction and render a judgment of acquittal.

### Background Facts

One Sunday evening in the summer of 2012, A.P. (Adrianna),[2] who was twelve years old, went to appellant's house to spend the night with a friend. While Adrianna was there, appellant forced his girlfriend and Adrianna's friend to leave the house, and he sexually assaulted Adrianna.

After doing so, he took Adrianna across the street and attempted to sell her for sex to one of his neighbors. The neighbor refused. Appellant then took her to a

1. See·Tex. Penal Code Ann. § 20A.02(a) (West Supp.2015).

2. To preserve the victim's anonymity, we use an alias. See McClendon v. State, 643 S.W.2d 936, 936 n. 1 (Tex.Crim.App. [Panel· Op.] 1982).

bar—the Silver Horse Saloon—where he again tried to sell her for sex.[3] Appellant told her to stay in his car and brought men from the bar to the car to look at her. Eventually, while appellant was inside the bar, the bar's bouncer found Adrianna in the car, persuaded her to unlock the car, took her inside the bar, and helped hide her from appellant. Appellant returned to the car, could not find Adrianna, and drove away.

The bouncer called the police. Police officers arrived and took Adrianna, who was acting timid and afraid, home. The officers told Adrianna's mother part of what had occurred, and she became upset to the point of almost passing out. After the police left, Adrianna told her mother about how appellant had sexually assaulted her.

A sexual assault nurse examiner (SANE) treated Adrianna. While speaking with the SANE, Adrianna had a scared but cooperative demeanor. The SANE physically examined Adrianna and obtained a biological sample from her that matched a biological sample that the police obtained from appellant. Adrianna also participated in a forensic interview. During the interview, she was "extremely narrative"; she gave a "verbal, sequential account of what [had] happened."

Through separate indictments, a grand jury indicted appellant for aggravated sexual assault and for trafficking. At trial, he pled not guilty to both charges. After hearing the parties' evidence and arguments, the jury convicted him of both offenses. He pled true to a habitual offender notice that both indictments included, and the jury received more evidence and arguments concerning his punishment. The jury assessed his punishment at ninety-nine years' confinement in each case. The trial court sentenced him in accordance with the jury's verdicts and ordered the sentences to run concurrently.

Although the jury charges on appellant's guilt and his punishment described trafficking as "Trafficking of a Person Under 18" or "Trafficking a Person Under 18," the trial court's judgment on that offense described the crime as "TRAFFICKING OF PERSONS U/18–FOR PROSTITUTION." Appellant brought this appeal from his conviction for trafficking.[4]

### Evidentiary Sufficiency

In his first point, appellant contends that the evidence is insufficient to support his conviction for trafficking. Specifically, he argues, "The evidence was legally insufficient to support the conviction for trafficking a child with [the] intent [that] the child engage in forced labor or services because the statutory definition of forced labor or services eliminated the very element of sexual conduct the [S]tate was bound by its indictment to prove."

3. The bar is located in a high-prostitution area. The evidence shows that appellant attempted to sell Adrianna to patrons of the bar for $30 or $50. The record also indicates that appellant was drunk while doing so.

4. Appellant also appealed his conviction for aggravated sexual assault, and we affirmed that conviction on the basis of his original appointed counsel's *Anders* brief. *Davis v. State*, No. 02–13–00469–CR, 2015 WL 831951, at *1 (Tex.App.–Fort Worth Feb. 26, 2015, pet. dism'd) (mem. op., not designated for publication); *see Anders v. California*, 386 U.S. 738, 744–45, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967).

With regard to this appeal, however, we disagreed with original appointed counsel's contention that the appeal was frivolous, abated the appeal, and remanded the cause to the trial court for the appointment of new counsel. The trial court appointed new counsel, who filed a brief on the merits of the appeal. The State also filed a brief.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *McKay v. State,* 474 S.W.3d 266, 269 (Tex.Crim.App.2015) (citing *Jackson*). To determine whether the State has met its burden under *Jackson* to prove a defendant's guilt beyond a reasonable doubt, we compare the elements of the crime as defined by the hypothetically correct jury charge to the evidence adduced at trial. *Thomas v. State,* 444 S.W.3d 4, 8 (Tex. Crim.App.2014); *see Crabtree v. State,* 389 S.W.3d 820, 824 (Tex.Crim.App.2012) ("The essential elements of the crime are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Thomas,* 444 S.W.3d at 8. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See id.*; *see also Rabb v. State,* 434 S.W.3d 613, 616 (Tex.Crim.App.2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

Appellant's indictment alleged that he had "KNOWINGLY [TRAFFICKED ADRIANNA], A CHILD YOUNGER THAN 18 YEARS OF AGE, WITH THE INTENT THAT [ADRIANNA] ENGAGE IN *FORCED LABOR OR SERVICES, TO-WIT: SEXUAL CONDUCT.*" [Emphasis added.] The trial court's charge to the jury on the issue of appellant's guilt stated in part, "A person commits the offense of trafficking a person if the person knowingly traffics a child with the intent that the trafficked child engage in forced labor or services." It also stated that forced labor or services meant "labor or services, *other than labor or services that constitute sexual conduct,* that are performed or provided by another person and obtained through an actor's use of force, fraud, or coercion." [Emphasis added.] Thus, appellant's indictment and part of his jury charge differ concerning whether "forced labor or services" may include "sexual conduct." [5]

The penal code resolves the conflict. Section 20A.02 of the penal code states, in relevant part, that a person commits trafficking if the person knowingly "traffics another person with the intent that the trafficked person engage in forced labor or services" or "traffics a child with the intent that the trafficked child engage in forced labor or services." Tex. Penal Code Ann. § 20A.02(a)(1), (5). Under either subsection (a)(1) or (a)(5) of section 20A.02, "forced labor or services" means "labor or services, *other than labor or services that*

---

**5.** Later, however, the charge instructed the jury,

> Now, if you find from the evidence beyond a reasonable doubt that [appellant] ... did ... knowingly traffic [Adrianna] ... with the intent that [she] engage in *forced labor or services, to-wit: sexual conduct,*

then you will find [appellant] guilty of Trafficking a Person Under 18 as charged in the Indictment. [Emphasis added.]

Thus, the jury charge conflicts not only with the indictment but with itself concerning whether forced labor or services may include sexual conduct.

*constitute sexual conduct,*[6] that are performed or provided by another person and obtained through an actor's use of force, fraud, or coercion." *Id.* § 20A.01(2) (emphasis added). Therefore, we agree with appellant's contention that his indictment and the application language in the jury charge that tracked it allowed the jury to convict him under a form of "forced labor or services"—sexual conduct—that the penal code explicitly declines to recognize.

■ Appellant argues that because the indictment particularly alleged that he committed trafficking by requiring Adrianna to engage in "FORCED LABOR OR SERVICES, TO WIT: SEXUAL CONDUCT," the State waived any entitlement to seek a conviction for other statutory methods of committing trafficking. Along with stating that a defendant commits an offense by trafficking a person with the intent that the person "engage in forced labor or services," the penal code also states that a defendant commits the same offense by

> (2) [receiving] a benefit from participating in a venture that involves an activity described by Subdivision (1), including by receiving labor or services the person knows are forced labor or services;
>
> (3) [trafficking] another person and, through force, fraud, or coercion, [causing] the trafficked person to engage in conduct prohibited by:
>
>> (A) Section 43.02 (Prostitution);
>>
>> (B) Section 43.03 (Promotion of Prostitution);
>>
>> (C) Section 43.04 (Aggravated Promotion of Prostitution); or

>> (D) Section 43.05 (Compelling Prostitution);
>
> (4) [receiving] a benefit from participating in a venture that involves an activity described by Subdivision (3) or [engaging] in sexual conduct with a person trafficked in the manner described in Subdivision (3);
>
> . . . .
>
> (6) [receiving] a benefit from participating in a venture that involves an activity described by Subdivision (5), including by receiving labor or services the person knows are forced labor or services;
>
> (7) [trafficking] a child and by any means [causing] the trafficked child to engage in, or become the victim of, conduct prohibited by [particular penal code provisions concerning sex-related crimes]; or
>
> (8) [receiving] a benefit from participating in a venture that involves an activity described by Subdivision (7) or [engaging] in sexual conduct with a child trafficked in the manner described in Subdivision (7).

Tex. Penal Code Ann. § 20A.02(a)(2)-(4), (6)-(8). We agree that appellant's conviction may not be supported by these statutory alternatives that were neither pled in the indictment nor described in the jury charge.[7] *See Rabb,* 434 S.W.3d at 616; *Cada v. State,* 334 S.W.3d 766, 773–74 (Tex.Crim.App.2011) (explaining that the sufficiency of evidence must be measured by the specific alternative elements "that the State has alleged in the indictment. Thus, if the State pleads one specific element from a penal offense that contains alternatives for that element, the sufficien-

---

6. "Sexual conduct" includes several particularly described acts. *See* Tex. Penal Code Ann. § 20A.01(3) (West Supp.2015), § 43.25(a)(2) (West 2011).

7. The State appears to concede that these statutory alternatives may not be used to measure the sufficiency of the evidence to support appellant's conviction.

cy of the evidence is measured by the element that was actually pleaded, not any other statutory alternative element."); *Fuller v. State,* 73 S.W.3d 250, 255 (Tex. Crim.App.2002) (Keller, J., concurring) ("When a statute lists more than one method of committing an offense, and the indictment alleges some, but not all, of the statutorily listed methods, the State is limited to the methods alleged.").

■ The State contends, however, that the "TO WIT: SEXUAL CONDUCT" language in the indictment was a nonstatutory, superfluous, and immaterial allegation; that the evidence at trial proved forced labor or services unrelated to sexual conduct; and that any variance between the language in the indictment and the proof at trial concerning the nature of the forced labor of services was an immaterial variance. The State argues that the indictment did not bind it to prove sexual conduct but only that appellant trafficked Adrianna with the intent that she engage in forced labor or services.

■ . Even if we were to agree with the State that the law allowed it to obtain a conviction for forced labor or services unrelated to sexual conduct even though the indictment and the application portion of the jury charge focused on sexual conduct,[8] we cannot conclude that sufficient evidence of such nonsexual labor or services appears in this record. Rather, the State proved the case it pled—the State's evidence and arguments focused on and proved up the sexual conduct allegation that appeared in the indictment and the jury charge.[9]

For example, during the State's opening statement, the prosecutor stated that after appellant had sexually assaulted Adrianna, he "offer[ed] her up" to a neighbor and then took her to a bar while telling her, "[T]hese guys are going to give me some money, and whatever they ask you to do, you just tell them, yes, you're willing to do it." The prosecutor then stated that appellant asked the bar's patrons whether they wanted to have sex with Adrianna and that the patrons "knew that there was something wrong with this little girl getting paid money to have sex with them."

During the State's closing argument, a prosecutor again argued that appellant had attempted to sell Adrianna for sex. The prosecutor contended,

> [Appellant] absolutely forced [Adrianna] to go [to the bar]. And what was he going to have her do? She said: Whatever they say, you say yes. You're going to make me some money tonight. *She knew that what he had just done to her was about to happen again and again and again until he got enough money to support whatever habit he was doing. . . .*
>
> . . . .
>
> . . . [Appellant] raped [Adrianna], left his DNA, [went] to a public place where many witnesses saw him, offered to sell her, told her to do whatever they said, [and] clearly trafficked her with intent for her—coerced her *with the intent for her to perform sexual acts . . .*
>
> . . . There is no doubt that he sexually assaulted her, no doubt based on the witnesses you've heard, based on the

8. We may not affirm a conviction on legal or factual grounds that were not submitted to the jury. *Winningham v. State,* 334 S.W.3d 289, 308 (Tex.App.–Fort Worth 2010, pet. ref'd) (citing *Malik v. State,* 953 S.W.2d 234, 238 n. 3 (Tex.Crim.App.1997)).

9. Indeed, at one point in its brief, the State represents that the " 'to wit' allegation *did not allege a different offense than was shown at trial.*" [Emphasis added.]

testimony from [Adrianna], and *there's no doubt when you read this charge that his intent that night was to knowingly traffic her, that he wanted her to perform sexual conduct for his pleasure.* And we ask that you find him guilty. [Emphasis added.]

Adrianna's mother testified that Adrianna had told her that appellant tried to "sell her across the street to the neighbor" and then tried to "sell her to some men" at the bar. Appellant's girlfriend at the time of the offense testified that appellant had told her on the night in question that he was "going to go sell the little slut for some money." The bouncer testified that when appellant arrived at the bar, he said that he had a young girl to offer for prostitution. He also testified that one of the bar's patrons turned down appellant's offer because Adrianna was too young. A bartender testified that appellant tried to sell Adrianna for $50 and took two men to his car so that they could look at her.

Adrianna testified that after appellant sexually assaulted her, he took her to a neighbor to sell her for sex. She also testified that after appellant took her to the bar, he brought men out of the bar to see her. She explained,

> They [were] telling him—you know, they [were] coming to the window, and they [were] looking at me, and then they would look at him, and then they'd shake their head no. And then he would go in the club and get somebody else. And the other person said no.

Adrianna testified that she had understood that she was there to make money for appellant.

The SANE testified that when Adrianna described the events that occurred on the night in question, she said,

> [Appellant] told me I was going to make him some money. He told me he was going to bring some men and for me to stay in the car, and when they asked me if I wanted to have sex, to tell them yes. He brought this Mexican man and told him he wanted $30. The Mexican man said, ["]Okay, but come back at 12:00.["] [Appellant] said, ["]No, I need it now.["]
> . . .
>
> When he went inside again, I opened the door, and I went [to] the security guard that was standing outside and told him I needed to call my mama *because [appellant] was trying to make me have sex with men.* The [security guard's] wife took me inside the bar and hid me from [appellant] and then called the police. [Emphasis added.]

It is true, as the State contends, that during appellant's interview with the police, he alleged that he had taken Adrianna to the bar with the intent to lure men the toward her and rob them rather than to sell her for sex. He also denied sexually assaulting Adrianna; he initially claimed that nothing at all had occurred with her and later claimed that she had undressed in front of him and that he had rejected her sexual advances. The State attempted to discredit appellant's statements; it elicited testimony from the detective who conducted the interview that he did not believe the story that appellant had conveyed and that he did not believe that Adrianna had embellished her account of what had happened. Viewing all of the evidence cumulatively, we cannot conclude that under the circumstances presented here, a rational trier of fact could have based appellant's trafficking conviction on his statement in his interview that he intended to use Adrianna only as bait for a robbery rather than for sex while rejecting his

other statements in the interview and while rejecting the significant other evidence (and accompanying arguments) that focused on his intent to sell her for sex.[10]

Because the State's pleading; the jury's instructions; and, most importantly, the trial's proof all focused on obtaining a trafficking conviction under a form of "forced labor or services"—sexual conduct—that the penal code explicitly declines to recognize and that a hypothetically correct jury charge would not include, we conclude that the evidence is insufficient to support the conviction. *See* Tex. Penal Code Ann. §§ 20A.01(2), 20A.02(a)(1), (5); *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *McKay,* 474 S.W.3d at 269; *Thomas,* 444 S.W.3d at 8. We sustain appellant's first point.[11]

## Conclusion

Having sustained appellant's first point, because the evidence is insufficient to support appellant's guilt for trafficking as the State charged it, we reverse the trial court's judgment and render a judgment of acquittal. *See* Tex.R.App. P. 43.2(c), 51.2(d); *Greene v. Massey,* 437 U.S. 19, 24–25, 98 S.Ct. 2151, 2154–55, 57 L.Ed.2d 15 (1978); *Burks v. United States,* 437 U.S. 1, 16–18, 98 S.Ct. 2141, 2150–51, 57

**10.** We note that the jury in this case could not have rationally convicted appellant of trafficking by both following the language in the application paragraph of the jury charge (which instructed the jury to convict appellant if it found that he trafficked Adrianna with the intent that she "engage in forced labor or services, to-wit: sexual conduct") and finding that appellant used Adrianna only as bait to commit a robbery.

The State also contends that appellant may have intended to "sell [Adrianna] so that he could make money while ridding himself of her so that she could not report the rape," but the evidence does not support this proposition.

L.Ed.2d 1 (1978); *Winfrey v. State,* 393 S.W.3d 763, 774 (Tex.Crim.App.2013).

GABRIEL, J., concurs without opinion.

**11.** Because we sustain appellant's first point, we do not address his second point or the State's cross-point, in which the State argues that we should reform the judgment "to accurately reflect that appellant was convicted of TRAFFICKING OF PERSONS U/18–FORCED LABOR OR SERVICES' rather than TRAFFICKING OF PERSONS U/18–FOR PROSTITUTION.'." *See* Tex.R.App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").