

NUMBER 13-16-00403-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JEREMY THAD NORTHCUTT,                                                      Appellant,

v.

THE STATE OF TEXAS,                                                            Appellee.

On appeal from the County Court at Law No. 2
of Bell County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Longoria**

Appellant Jeremy Northcutt appeals his conviction of assault causing bodily injury

to a family member, a class-A misdemeanor. *See* TEX. PENAL CODE ANN. § 22.01(a)(1)

(West, Westlaw through 2017 1st C.S.). Northcutt argues: (1) the trial court erred by

allowing the State to offer rebuttal testimony; and (2) the evidence is insufficient to support

his conviction for assault causing bodily injury. We affirm.

## I. BACKGROUND[1]

Northcutt's wife, Amber, testified that on August 15, 2014, she and Northcutt went to a local club to play pool and drink. The two entered into an argument about a picture on Northcutt's phone of a woman in underwear. According to Amber, the argument continued at their home when Northcutt accused her of stealing one of his guns and threatened to call the police. Amber left the house several times, and the arguments continued each time she returned. Amber testified that when she returned for the final time, Northcutt choked her until she passed out. After she regained consciousness, Amber claims that Northcutt choked her again, and then kicked her repeatedly. Amber testified that she passed out a second time, but this time she woke up outside, three houses down the road from her own house. A passerby saw Amber and called the police, who in turn called an ambulance. She was taken to a hospital where she was diagnosed with multiple fractures throughout her body and "brain bleed"; she was then transferred to another hospital because of the severity of her injuries. Amber explained that her diagnosis from the hospital included a hairline orbital fracture, a broken nose, bruised ribs, ligature marks on her neck, and bleeding on the brain.

Lacey Bobbitt, an investigator with the Killeen Police Department, testified that she was assigned to the case to follow-up on the initial incident report. Because Northcutt was an active-duty soldier in the United States Army, Officer Bobbitt attempted to contact Northcutt both by calling him directly and by reaching out to Northcutt by way of his chain of command on several occasions.

---

[1] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).

Before Northcutt testified, he called his ex-wife, Rebecca Wharton, to testify; she stated that he had a general reputation for truthfulness. During his own testimony, Northcutt denied assaulting Amber in any fashion. Instead, he testified that Amber was prone to bouts of violence when she was intoxicated, as she was on the night of August 15, 2014. He claims that he locked himself in the bathroom to hide while she was behaving violently and throwing herself to the ground. When she left the house for the final time that night, he claims that she did not have any marks on her or appear to be injured. He went to the Army Station to provide a written statement. According to Northcutt, he was told by his Army chain of command that the Killeen police did not need to see him at the moment, and that the police would contact him if necessary. Northcutt further asserted that he generally does what he is told in the Army and that he never contacted the police because he was never instructed to do so. After Northcutt's testimony, Wharton again testified of Northcutt's general reputation in the community for being very truthful. In response to Northcutt's testimony that he always obeys orders and would have contacted the police if he were commanded to do so, the State called his commanding officer, Captain Gregory Himmel, in rebuttal. Captain Himmel disagreed that Northcutt always obeyed orders and testified that Northcutt disobeyed "probably every other order."

The jury found Northcutt guilty of assault causing bodily injury to a family member, and the trial court sentenced Northcutt to one year incarceration in the Bell County Jail. However, the jail sentence was suspended, and Northcutt was placed on community supervision for twenty-four months instead. This appeal ensued.

## II. REBUTTAL TESTIMONY

In his first issue, Northcutt argues that the trial court should not have allowed the State to offer Captain Himmel's rebuttal testimony.

### A. Standard of Review and Applicable Law

"A trial judge's decision on the admissibility of evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement." *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011).

Generally, witnesses cannot be impeached on collateral matters; however, when a witness gives misleading testimony about a collateral matter, the witness may be impeached on that matter to correct the false impression. *See Ramirez v. State*, 802 S.W.2d 674, 675 (Tex. Crim. App. 1990); *Poole v. State*, 974 S.W.2d 892, 905 (Tex. App.—Austin 1998, pet. ref'd). This form of impeachment is only available if the witness opens the door by voluntarily testifying about the collateral matter in the first place. *Lopez v. State*, 928 S.W.2d 528, 531 (Tex. Crim. App. 1996).

### B. Discussion

Northcutt contends that he never opened the door to allow the State to offer rebuttal testimony. He argues that he did not assert to obey all orders; instead, he argues that he testified in general that a person in the Army is supposed to always obey orders and that he followed orders, in this particular instance, by waiting for the police to contact him. The State argues that Northcutt opened the door to rebuttal testimony on his truthfulness by testifying that he always obeys orders and by having his ex-wife testify about this character for truthfulness. We agree with the State.

4

Officer Bobbitt testified that she called Northcutt directly and contacted his chain of command in an attempt to interview Northcutt. She also testifies that the Army informed her that Northcutt had been informed of her request. In response, the following exchange occurred during Northcutt's testimony.

Defense counsel: Okay. So basically, you being in the military, you basically do what you're told to do, isn't that correct?

Northcutt: Yes, ma'am, by my superior.

Defense counsel: And were you ever told to contact KPD?

Northcutt: No, ma'am.

In other words, Northcutt testified that had he been made aware of the police department's desire to contact him, then he would have contacted them. By implication, Northcutt gave the impression that Officer Bobbitt was lying about contacting his chain of command. Therefore, rebuttal testimony would be appropriate in this scenario to correct the false impression. *See Ramirez*, 802 S.W.2d at 675. Furthermore, Northcutt continually advocated at trial that he was telling the truth and that Amber was lying when she accused him of choking and hitting her. To bolster his argument that Amber was a liar and that he was truthful, he also had his ex-wife testify to his general reputation for truthfulness.

By testifying that he always does what he is told by his superiors, giving the impression that Officer Bobbitt lied about contacting his chain of command, accusing Amber of lying, and by having his ex-wife testify of his general reputation for truthfulness, we conclude that Northcutt opened the door to the State's limited rebuttal testimony to correct the false impression of his truthfulness. *Lopez*, 928 S.W.2d at 531. The trial court did not abuse its discretion in allowing the State to offer rebuttal testimony. *Tillman*, 354 S.W.3d at 435. We overrule Northcutt's first issue.

5

## III. LEGAL SUFFICIENCY

In his second issue, Northcutt argues that the evidence was insufficient to sustain his conviction for assault because there was a lack of evidence linking Northcutt to any of Amber's specific injuries.

### A. Standard of Review and Applicable Law

In criminal cases, we review whether sufficient evidence supports a conviction by considering all of the evidence introduced at trial in the light most favorable to the verdict and deciding whether any rational trier of fact could have found the State proved all of the essential elements of the offense beyond a reasonable doubt. *McKay v. State*, 474 S.W.3d 266, 269 (Tex. Crim. App. 2015) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard tasks the factfinder, the jury in this case, with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from it. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Our role on appeal is limited to determining whether the necessary inferences drawn by the jury are reasonable based upon the cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.* If the record supports conflicting inferences, we presume that the jury resolved the conflict in favor of its verdict and defer to that determination. *Id.* at 448–49; *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014).

We measure the sufficiency of the evidence against the essential elements of the offense defined by the hypothetically correct jury charge for the case. *Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013). The hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict its theories of

6

liability, and adequately describes the particular offense for which the defendant was tried. *Id.* (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The hypothetically correct jury charge for this case required the State to prove that Northcutt (1) intentionally, knowingly, or recklessly (2) caused (3) bodily injury to (4) Amber (5) by striking her on and about the head and face or body and that, at the time (6) Amber was a member of his family. *See* TEX. PENAL CODE ANN. § 22.01(a)(1). Bodily injury is defined as physical pain, illness, or any impairment of physical condition. *See* TEX. PENAL CODE ANN. § 1.07(8) (West, Westlaw through 2017 1st C.S.).

## B. Discussion

Even though Northcutt acknowledges that we must presume that the jury resolved any conflicting inferences in favor of the prosecution in this case, he argues that the evidence is insufficient because the record only contains a "modicum" of evidence concerning Northcutt's causation of bodily harm to Amber. *See Jackson*, 443 U.S. at 314. The State argues that a rational jury, given all of the evidence, could find each element of assault causing bodily injury to a family member beyond a reasonable doubt. We agree with the State.

Northcutt claims the only evidence that Northcutt caused the harm is Amber's own testimony, and yet she admitted that several of the injuries seen by the police officers and hospital staff were her own fault and not caused by Northcutt. Furthermore, Northcutt relies on the fact that the first officer that arrived and found Amber in the street testified that he did not notice any injuries. However, the police officer also testified that it was very dark outside. Additionally, Amber admitted to already having a broken nose and several bruises before the argument with Northcutt. But Amber testified, and the medical

7

records indicated, that she also had a hairline orbital fracture, bruised ribs, ligature marks on her neck, and bleeding on the brain. Furthermore, Amber testified that all the photographs admitted at trial showed her new injuries, not the injuries she had sustained before her argument with Northcutt. Amber's mother also testified that she saw Amber a couple of weeks before the incident and that Amber did not have any of the new injuries at that time.

Resolving all conflicts in favor of the verdict, we conclude that there was more than a mere modicum of evidence that Northcutt caused the harm. *See id.* After reviewing all of the photographs, medical records, and testimony, a rational jury could have found that the State proved all of the elements of assault by causing bodily injury to a family member beyond a reasonable doubt. *McKay*, 474 S.W.3d at 269. We overrule Northcutt's second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
22nd day of March, 2018.

8