

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JOHN DAVID NAJERA, | § | No. 08-15-00315-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 120th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC#20130D01090) |
| | § | |

**O P I N I O N**

John David Najera appeals his conviction for theft of service in the amount of over $1,500 and less than $20,000. In his sole issue on appeal, Appellant contends there was legally insufficient evidence to support a finding that the statutory notice was given as required in cases of theft of service. Specifically, Appellant argues the State produced no evidence or only a modicum of evidence the demand for payment was sent with a return receipt requested as required by Section 31.04(c) of the Penal Code. For the following reasons, we reverse the judgment of the trial court and render judgment of acquittal.

**BACKGROUND**

This case involves alleged theft of service for roof repairs performed by a subcontractor

and the notice element of that offense. The complainant, Esteban Rangel, was an experienced construction worker and at the time of the incident served primarily as a supervisor, hiring his own employees and directing the projects he was hired to do. Rangel was referred by a friend to Appellant, who hired him to do roof repairs to the home of Scott and Olga Schmidt. Rangel was not a citizen of the United States at the time and thus did not have a social-security number; nonetheless, the two men made an oral agreement that Rangel would do the roofing work for Appellant and would be compensated $2,295 upon completion. Rangel and his team began the roofing work on November 21, 2011.

On the first day of the job, as work began, Appellant was on site discussing the project with Rangel. Employees overheard Appellant telling Rangel he would not pay him for the work until he received a social-security number and a form of identification. Without further confrontation on the issue, Rangel and his team proceeded with the roofing job, taking five days to complete the work to both the Schmidts' and Appellant's satisfaction. Upon completion, Rangel requested payment but was told by Appellant that he would need to do additional work before being paid. The following day, Rangel called Appellant and again requested payment for the job but Appellant requested he come by and speak with him instead. When they met up, Appellant offered to pay only half of the $2,295 at that time and requested Rangel sign a new agreement for additional work on the Schmidt's home before receiving payment in full. Rangel stated he was willing to do the additional work, but would not sign the agreement or do additional work until he received payment in full. Appellant responded he would not pay for the work if the additional work was not completed. Sometime after that meeting, Rangel approached the Schmidts and told them Appellant had refused to pay him. Mr. Schmidt told Appellant to pay Rangel, but he refused.

2

The Schmidts then withheld payment from Appellant. After some back and forth, Rangel requested they pay Appellant what they had withheld and the Schmidts relented. Rangel continue to make requests for payment from Appellant—including multiple unanswered phone calls—but these were unfruitful.

Eventually, Appellant sought the help of the Labor Justice Committee ("LJC"),[1] an association established to fight wage theft in El Paso. Rangel's case was handled by Tom Powers and David Guzman of the LJC, who collected information and documented the claims Rangel had against Appellant. On January 23, 2012, the LJC sent a "Notice Demanding Payment" to Appellant, demanding he either pay Rangel the $2,295 within ten days or face potential criminal prosecution. Appellant did not respond to the letter or make any overtures or payments to Rangel, and the LJC referred the matter to the police for investigation.

Appellant was charged with theft of service in the amount of over $1,500 and less than $20,000. At trial, the prosecution introduced the LJC business records regarding Rangel's case, and Guzman testified to the practices and procedures of the organization. The State asked Guzman how the LJC ensured the demand letters they send are received by the addressee, and Guzman stated the letters are sent via certified mail. On cross-examination, Guzman was further questioned regarding the demand letter sent to Appellant and confirmed that it was sent without a return-receipt requested. Upon further questioning, Guzman stated he was not sure if the demand letter was sent without requesting a return receipt, but confirmed LJC had not received a return receipt and did not have one in their records for Rangel's case. The third line down from the top in a copy of the letter itself stated "[s]ent by certified mail/return receipt requested." However,

---

[1] The Labor Justice Committee is also referred to as Paso Del Norte.

the official certified mail receipt from the U.S. Postal Service showed the letter was sent via certified mail but without return-receipt requested.

After the State rested its case-in-chief, Appellant moved for a directed verdict based on Section 31.04(c) of the Penal Code, which requires a demand for payment be sent "by registered or certified mail with return receipt requested . . . ." TEX.PENAL CODE ANN. § 31.04(c)(West 2016). Appellant argued the State had failed to meet its burden to prove the demand was sent with return-receipt requested; the State, in turn, argued a request for a return receipt was not required and that a demand sent by certified mail alone was sufficient for purposes of the statute. The court denied the motion, and both sides rested. The jury found Appellant guilty of theft of service and sentenced him to 180 days confinement and a $5,000 fine, recommending community supervision. The court sentenced Appellant to three years' of community supervision, and ordered him to pay $2,295 in restitution. This appeal followed.

## DISCUSSION

In his sole issue on appeal, Appellant contends the evidence was legally insufficient to demonstrate the demand letter sent by the LJC was sent with a return receipt requested. He argues that because this type of notice was specifically required by Section 31.04(c) of the Penal Code, no jury could have rationally concluded beyond a reasonable doubt that element of the offense had been met, and his conviction should be reversed.

### *Standard of Review*

An essential element of due process as guaranteed by the Fourteenth Amendment is that the State prove every element of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979). When assessing the

4

legal sufficiency of the evidence, the reviewing court does not act as a thirteenth juror, reweighing the evidence and substituting its judgment for that of the jury. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999), *holding modified by Guidry v. State*, 9 S.W.3d 133 (Tex.Crim.App. 1999). Instead, we view the evidence in the light most favorable to the verdict, and will uphold the conviction if there is sufficient evidence to justify any rational trier of fact to find the appellant guilty beyond a reasonable doubt on all essential elements of the offense. *Salinas v. State*, 163 S.W.3d 734, 737 (Tex.Crim.App. 2005). But this deferential posture does not relieve us of our responsibility to conduct legal sufficiency reviews to ensure the evidence establishes the elements of an offense. *Queeman v. State*, 520 S.W.3d 616, 631 (Tex.Crim.App. 2017). An appellate court acts as a procedural failsafe against irrational verdicts, and we may reverse a conviction on legal sufficiency grounds where no rational juror could find guilt beyond a reasonable doubt based on the evidence presented. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). We measure the legal sufficiency of the evidence by the statutory elements of the offense as modified by the allegations set out in the indictment. *Saul v. State*, 510 S.W.3d 672, 683 (Tex.App.--El Paso 2016, pet. ref'd)(citing *Malik v. State*, 953 S.W.2d 234, 239 (Tex.Crim.App. 1997)). The evidence may be legally insufficient where the record contains no evidence of an essential element or only a modicum of evidence of one element, or if the record conclusively establishes a reasonable doubt. *Britain v. State*, 412 S.W.3d 518, 520 (Tex.Crim.App. 2013)(citing *Jackson*, 443 U.S. at 320, 99 S.Ct. at 2789). Evidence that is so weak it creates only a suspicion that a fact exists is no more than a modicum or a scintilla of evidence, and is legally insufficient. *McKay v. State*, 474 S.W.3d 266, 270 (Tex.Crim.App. 2015). While each fact need not point directly and independently to the appellant's guilt, the cumulative force of all incriminating circumstances must

5

be sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). Where the evidence is sufficient to support conflicting inferences, we must assume the jury resolved the conflict in favor of the verdict. *McKay*, 474 S.W.3d at 270.

*Analysis*

In Texas, the offense of theft of service under Section 31.04(a)(4) requires the State to prove; (1) a person, (2) with intent to avoid payment for service he knows to be provided only for compensation, (3) secures the performance of the service by agreeing to provide compensation, and (4) after the service is rendered fails to make full payment, (5) after receiving a notice demanding payment. TEX.PENAL CODE ANN. § 31.04(a)(4). Section 31.04(c) requires the notice demanding payment to be in writing and to be "sent by registered or certified mail with return receipt requested or by telegram with report of delivery requested . . . ." TEX.PENAL CODE ANN. § 31.04(c). As noted above, we measure the sufficiency of the evidence against the hypothetically correct jury charge, and the essential elements of the crime are determined by state law. *Crabtree v. State*, 389 S.W.3d 820, 824 (Tex.Crim.App. 2012).

In the present case, the indictment charged Appellant with hiring Rangel to perform construction work he knew was only being done for compensation by agreeing to provide payment—but all the while intending to avoid payment—and then refusing to provide payment after Rangel completed the work and after he had received notice demanding payment. The hypothetically correct jury charge, accordingly, would require the State to prove; (1) Appellant, (2) with intent to avoid payment for a service he knew to be provided only for compensation, (3) secured Rangel's performance of the roof repairs by agreeing to compensate him for them, (4) and failed to pay Rangel in full (5) after the repairs had been made and after having received a notice

6

demanding payment. TEX.PENAL CODE ANN. § 31.04(a)(4). Appellant only challenges the notice element, contending the evidence provided by the State was legally insufficient to demonstrate the demand letter was sent with a return receipt requested as required by Section 31.04(c).

A reviewing court must avoid reweighing evidence and thus usurping the function of the fact finder, but must also ensure there was sufficient evidence to allow the fact finder to find the defendant guilty on all essential elements of the offense beyond a reasonable doubt. *Salinas*, 163 S.W.3d at 737. For example, in *McKay v. State*, the defendant was convicted of criminally negligent injury to a child after bumping into a two-year-old while holding a pot of hot green beans and water and spilling the contents down the child's back. *McKay*, 474 S.W.3d at 267-68. The defendant—a family friend who was living at the child's home—challenged the sufficiency of the evidence as to the culpable mental state, and the court of appeals upheld the conviction based on the mother's statement in a report provided by the Texas Department of Family and Protective Services. *Id*., at 270. The mother stated the child was often underfoot, and based on this statement in the report the court of appeals reasoned the jury could have concluded this meant the child was also often getting in the way of the defendant and he therefore should have known she would be close by while he was cooking. *Id*., at 269. This was the sole piece of evidence relied on by the court of appeals in upholding the conviction. *Id*., at 270. The Court of Criminal Appeals reversed, holding the statement could not show the defendant should have been aware of the risk that the injury to the child would occur from his actions. *Id*., at 270-71. The court reasoned the statement was insufficient because it was not supported by evidence showing the defendant was aware of the child's propensity to be in the way or that this was ever communicated

7

to the defendant by the mother, despite the fact he had lived with the family for nearly three months. *Id.* In holding the court of appeals' reasoning took too great a leap of logic, it stated "although we assume that the jury resolved any conflicting inferences in favor of the prosecution, there was no such conflicting inference in this case at all. No reasonable inference can be drawn in regards to [the defendant] from [the mother's] statement." *Id.*

The court similarly found too great a leap had been made in a case involving criminally negligent homicide. In *Queeman v. State*, the defendant was convicted of criminally negligent homicide when he rear-ended a vehicle on a two-lane highway as the other vehicle was attempting to turn off onto an intersecting street. *Queeman*, 520 S.W.3d at 619. The defendant testified he was driving thirty-six to thirty-seven-miles per hour in a forty-miles per hour zone. *Id.*, at 620. To demonstrate the defendant was excessively speeding—and thus grossly deviating from the standard of reasonable care—the State called the investigating officer, who opined that based on his investigation the defendant was driving "significantly" faster than he had suggested. *Id.* The officer testified, however, that he was unable to ascertain the defendant's specific pre-impact speed based on the facts available to him. *Id.* The Court of Criminal Appeals held that even when the evidence was viewed in the light most favorable to the jury's verdict, it would not permit a rational jury to determine he was excessively speeding. *Id.*, at 625. The testimony that the defendant was driving "significantly" faster than thirty-six to thirty-seven-miles per hour was not enough without quantification, because that would require speculation by the jury beyond what is shown by the evidence or what could be rationally inferred from the evidence. *Id.*

Here, Guzman testified the demand for payment was sent via certified mail without a return receipt requested. He further testified it was not the LJC's practice to always send demand letters

with return receipts requested. Upon further questioning, Guzman stated he could not be sure if the letter was sent without requesting a return receipt because he was not handling the case at the time, but confirmed LJC had not received a return receipt and did not possess one in their business records of Rangel's case. The State introduced the purchase receipt from the U.S. Postal Service, which showed no return receipt was requested or paid for when the letter was sent. A line in the heading of a copy of the letter to be sent stated "[s]ent by certified mail/return receipt requested." The State now argues we must uphold the verdict because the line in the letter to be sent stated it would be sent with a return receipt requested. This evidence demonstrates, at most, a possible intent on the part of the LJC to send the letter "certified mail/return receipt requested," and is the only evidence pointed to by the State. The remaining evidence conclusively establishes the letter was *not* sent with a return receipt requested: the official U.S. Post Office pay receipt shows the letter was sent with no return receipt requested, Guzman testified to the same, and the LJC had no return receipt in their file on Rangel's case. A rational juror could not, based on the evidence presented, conclude beyond a reasonable doubt the letter sent met the requirements of the statute; to do so would require speculation by the jury beyond what is shown by the evidence or what could be rationally inferred from the evidence, such as why the U.S. Postal Service might have provided return receipt service it was not requested to perform or paid to perform. While we are required to presume conflicting inferences were resolved in favor of the verdict, no reasonable inference can be drawn here regarding the method of delivery from the copy of the letter to be sent. *See McKay*, 474 S.W.3d at 270-71. Accordingly, no rational juror could have concluded beyond a reasonable the notice demanding payment was sent to Appellant in the method prescribed in Section 34.01(c) of the Penal Code. Appellant's first issue is sustained.

**CONCLUSION**

Having held the evidence was legally insufficient to support Appellant's conviction for the offense of theft of service, we reverse the judgment of the trial court and enter a judgment of acquittal.


July 27, 2018

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J. (Not Participating)

(Do Not Publish)